**Richard SPENCER, Sally Spencer,
Plaintiffs–Appellees,**

*v.*

**James SUTTERFIELD,
et al., Defendants,**

Darrell Keller, Scioto County Deputy Sheriff, in his individual capacity; Richard H. Richardson, an agent of the Ohio Department of Taxation in his individual capacity, Defendants–Appellants.

No. 02–3457, 02–3458.

United States Court of Appeals, Sixth Circuit.

May 28, 2003.

Before GUY, SUHRHEINRICH, and BATCHELDER, Circuit Judges.

PER CURIAM.

Darrell Keller, a deputy sheriff for Scioto County, and Richard Richardson, an agent of the Ohio Department of Taxation (ODT), filed interlocutory appeals from the district court's decision denying them qualified immunity with respect to some of the Fourth Amendment claims asserted by plaintiffs Richard and Sally Spencer under 42 U.S.C. § 1983. The district court, having adopted the various reports and recommendations issued by the magistrate judge on a number of pending motions, granted in part and denied in part the motions for summary judgment filed by plaintiffs and by Richardson and Keller. After review of the record and the applicable law, we REVERSE the denial of qualified immunity to Richardson with respect to the March 1995 warrant to search Hilltop Market and to Keller with respect to the October 1995 warrants to search plaintiffs' home and rental business.[1]

## I.

In January 1995, Deputy Keller was assigned to investigate a complaint received by the Scioto County Sheriff's Department about the possible theft and resale of Pepsi products at the Fastop Market convenience store, located in Portsmouth, Ohio. The complaint was made by Larry Knapp, a local competitor who owned the Maple Grove Carry-out. Knapp also registered a complaint with the United States Department of Agriculture alleging that Fastop had redeemed food stamps for nonredeemable items such as beer and cigarettes.

Richard Spencer and his brother Michael, who is not a party to this action, owned the real estate for Fastop Market through a partnership. Michael Spencer was the designated owner of the convenience store business of Fastop. The brothers had also purchased the Hilltop Market together, which was the subject of one of the challenged search warrants. While Michael later gave up his interest in Hilltop, he continued to be involved in its management. Two other markets, Quickstop Market and Spencer's Market, were also owned by a partnership in which Richard and Michael Spencer each had an ownership interest.

Keller's investigation substantiated allegations that Pepsi products were being diverted from a Pepsi distributor and resold at heavily discounted prices to Fastop Market and other customers. Fastop was, in turn, providing large quantities of Pepsi products to Spencer's Market. Keller learned from Walt Lewis, an employee of Spencer's Market, that his employer was taking delivery of Pepsi products from an unmarked truck, that sales tax was not being recorded, and that employees were redeeming food stamps for purchases of beer and cigarettes.[2]

---

1. Plaintiffs' cross-appeal from portions of the same order was dismissed without prejudice following the district court's denial of their motion for certification under Fed.R.Civ.P. 54(b).

2. During the same time frame, a separate investigation was conducted by the Ohio De-

The county prosecutor's office contacted the Ohio Department of Taxation, which assigned Richardson and Jack Dunkle, another ODT agent, to investigate possible state sales tax violations. They visited the Fastop Market, noted the exempt and nonexempt merchandise, and purchased a can of untaxed Pepsi–Cola. They visited other convenience stores in the area, including the other stores owned by Richard and Michael Spencer; made controlled purchases of Pepsi products; and analyzed the exempt and nonexempt sales that were reported on the sales tax returns for the Spencer convenience stores.

In March 1995, Richardson prepared affidavits in support of the applications for warrants to search Spencer's, Quickstop, Fastop, and Hilltop for evidence of Ohio sales tax violations. Warrants to search Michael Spencer's residence and another business were also obtained. The district court found that the validity of the Fastop warrant had been fully litigated by Michael Spencer in the criminal proceedings brought against him and that there was probable cause to support the warrants to search Spencer's and Quickstop. As for Hilltop, however, the district court found the warrant so lacked probable cause that a reasonable officer would have known it. For this reason, Richardson was denied qualified immunity with respect to the Hilltop search warrant only.[3]

As a result of the sales tax investigation, the Ohio Department of Insurance began an investigation of Richard Spencer's insurance agency. Deputy Keller assisted in the insurance investigation and was the affiant on the applications for several related search warrants that were executed in October 1995. While rejecting some portions of the affidavits, the district court nonetheless found probable cause to believe evidence of falsification would be found at the Spencer Insurance Agency. Despite probable cause to believe an offense had been committed, the district court found no nexus had been established to search plaintiffs' residence or rental business for evidence of falsification. As a result, the district court found no probable cause to search those places and denied Keller qualified immunity with respect to those two warrants.

Richardson and Keller filed timely appeals from the portion of the district court's order denying them qualified immunity from suit on these claims.[4]

## II.

We review the denial of summary judgment on the grounds of qualified immunity *de novo*, as it involves a question of law. *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir.1999) (en banc); *Greene v. Reeves*, 80 F.3d 1101, 1104 (6th Cir.1996). In actions seeking damages under 42 U.S.C. § 1983, qualified immunity protects a public official from

partment of Human Services concerning the food stamp allegations. Plaintiffs were not charged criminally as a result of the food stamp investigation, but Spencer's Market was disqualified from participating in the food stamp program. Also, several customers were indicted on felony food stamp violations and pleaded guilty to misdemeanors.

**3.** Although Dunkle participated in the investigation and Keller was present when the warrants were issued, the district court found that neither of them was sufficiently involved in obtaining those warrants to be liable under § 1983.

**4.** In denying plaintiffs' motion to dismiss these interlocutory appeals, we found we have jurisdiction over the legal determination that the defendants are not entitled to qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 526–28, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Behrens v. Pelletier*, 516 U.S. 299, 307, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996).

being sued as long as the official "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The qualified immunity question involves a two-part inquiry: first, whether the facts as alleged and viewed in the light most favorable to plaintiff showed the defendant's conduct violated a constitutional right; and second, if so, whether that constitutional right was so clearly established that a reasonable official would understand that the particular conduct would violate that right. *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

These appeals involve claims challenging the validity of three searches, each of which was conducted pursuant to a judicially authorized search warrant. The probable cause required to obtain a valid search warrant is satisfied when " 'the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched.' " *Greene,* 80 F.3d at 1106 (quoting *United States v. Besase,* 521 F.2d 1306, 1307 (6th Cir.1975)). "Probable cause is defined as reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion, that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. King,* 227 F.3d 732, 739 (6th Cir.2000) (internal quotation marks and citations omitted).

■ An officer whose request for a warrant is alleged to have caused an illegal search or arrest is shielded by qualified immunity unless "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley v. Briggs,* 475 U.S. 335, 344–45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.* at 341, 106 S.Ct. 1092.

## A. Richardson's Appeal

■ The affidavits and warrant applications for the four convenience stores were presented to Municipal Court Judge Harcha on March 15, 1995. The warrants related undercover purchases of Pepsi products from the subject convenience stores made within the previous week. The Fastop warrant was based on undercover purchases made on two separate days: one purchase of 24 cans for $5.50 for which a cash register receipt was given indicating that tax *had* been charged; and another for a single can at 50¢ with no tax having been charged. The warrant for Spencer's Market stated that the displayed price for a single can was 50¢ plus tax, but no tax was charged or collected upon purchase. For the Quickstop warrant, the warrant stated that an undercover purchase was made of 24 cans of Pepsi soft drinks for $8.26 and the cash register receipt indicated no tax had been charged. Richardson's affidavit for the Hilltop Market, the one at issue in this appeal, stated that an undercover purchase was made of 24 cans of Pepsi soft drinks for $6.80 and, upon request, a handwritten receipt for that amount was provided. That receipt gave no indication of whether tax had been charged.

Judge Harcha spent between 45 and 90 minutes reviewing the applications and required Richardson to add a handwritten statement to each affidavit stating that the

owner of the convenience store had an interest in other businesses under investigation for sales tax violations. Judge Harcha testified that he felt this statement was important to his determination that there was probable cause to support each of the convenience store search warrants. The district court, in adopting the findings of the magistrate judge, found this additional statement (1) provided "the link whereby the facts supporting one warrant might be used to support the facts of all warrants," and (2) demonstrated that Judge Harcha "viewed the warrants as collectively establishing probable cause."

Although the convenience store warrants were issued on March 15, they were reissued the following day when Richardson returned with applications for additional search warrants to search the residence of and a business owned by Michael Spencer, who is not a party to this action. Those applications were accompanied by statements from Walt Lewis and Steven Mowery, both of whom had been employed at Spencer's Market. Judge Harcha directed Richardson to add the statements of Lewis and Mowery to the affidavits from the day before and then reissued the warrants to search the four convenience stores.

Lewis wrote that he was "ordered by the management word [sic] from Mike Spencer, to ring items of cigarettes and beer, [etc.] as a non taxable item to lower the tax payout monthly. The tax amount from per [sic] cigarettes [etc.] is charged to the customer but not obvious on the register tape because it is rang under [sic] a grocery key." Similarly, Mowery's statement indicated that Tim Jordan, a manager at Spencer's Market, told him to ring taxed items up on the grocery key. Mowery's statement also provided the nexus to search Michael Spencer's home (not plaintiffs' home), for records relating to the sales tax investigation. These statements were criticized by the magistrate judge because Lewis and Mowery failed to indicate either when they were told to avoid the sales tax or whether they had complied with those instructions.[5]

In accepting the findings of the magistrate judge, the district court concluded that the affidavits provided probable cause to support three of the four warrants. The court found that both the failure to collect sales tax and the failure to pay collected sales tax are criminal offenses under Ohio Revised Code § 5739.99. The court also accepted the magistrate judge's assessment that "the sum total of investigative knowledge possessed by Defendants Dunkle and Richardson more than satisfied the probable cause required to obtain the warrants in question in this case." According to the magistrate judge, however, problems with the warrant arose because they did not share all of their information with Judge Harcha.

In denying summary judgment to Richardson with respect to the Hilltop warrant, the court explained that:

> The search warrant at Hilltop was based on a single controlled buy of 24 cans of Pepsi–Cola. The handwritten receipt, which was requested by the purchaser, shows only the amount paid by the purchaser [of $6.80] and not an itemization or break-down of amounts allocated to the product and to the tax. No itemization was requested by the purchaser and the total paid is consistent with the collection of a 6% tax on a bulk

---

**5.** Plaintiffs' claims do not involve the warrants obtained for Michael Spencer's business or his residence. In fact, the district court found Michael Spencer had fully litigated the issue before entering a no contest plea to two counts of filing false or fraudulent sales tax returns on behalf of Fastop Market.

purchase of $6.42. There was no advertised price to conflict with a possible purchase price of $6.42.

This led the court to conclude there was no proof of even one criminal transaction at Hilltop, much less a continuing pattern of criminal behavior. Then, without further analysis of the qualified immunity question, the court concluded that the lack of probable cause would have been apparent to a reasonable agent.

Challenging the court's inferences regarding the Hilltop receipt, Richardson argues that this speculative explanation would mean the store had charged a higher per can price for the two 12–packs (26.75¢) than it was advertising for a single can (25¢). Further, and more importantly, Richardson maintains that the district court erred by examining the Hilltop affidavit in complete isolation from the other warrant applications presented at the same time.

It is clear from the record, and undisputed by plaintiffs, that Judge Harcha did not consider the Hilltop affidavit in isolation when he concluded there was probable cause to believe that a tax violation had been committed and that evidence thereof would be found at the Hilltop Market. The four affidavits, presented together and relating to a single investigation into sales tax violations by several convenience stores under common ownership, were properly considered together in making the probable cause determination. *See United States v. Mfrs. Nat'l Bank of Detroit,* 536 F.2d 699, 702 (6th Cir.1976) (two affidavits presented closely in time with respect to a single criminal investigation

may be considered together). By reissuing the warrants the following day, Judge Harcha also incorporated the statements of Lewis and Mowery, which supported an inference that management was seeking to avoid sales tax obligations at the convenience stores. We find that the affidavits and statements presented to the issuing judge, when taken together, establish probable cause to support a warrant to search the Hilltop Market for evidence of sales tax violations.[6]

Even if we were to find there was not sufficient probable cause for the warrant to search Hilltop Market, we would find Richardson is entitled to qualified immunity under *Malley.* Since there was no separate analysis of this issue, we presume the district court continued to view the Hilltop affidavit in isolation. When the information provided in the affidavits is viewed collectively, we are satisfied that it was objectively reasonable for Richardson to believe there was probable cause to support the issuance of the Hilltop warrant.

Finally, plaintiffs argue that Richardson failed to disclose in the affidavits either that taxes were charged in other controlled purchases, or that Lewis and Mowery had been fired from employment at Spencer's Market before providing the statements offered in support of the warrants. An officer cannot rely on the judicial determination of probable cause if he knowingly makes false statements or omissions in the affidavit that are material to the finding of probable cause. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57

---

**6.** Richardson also argues that the magistrate judge erroneously applied a preponderance of the evidence standard to the probable cause determination. *Greene,* 80 F.3d at 1105. The magistrate judge's discussion includes the statement that the Hilltop receipt could not have allowed the issuing judge to conclude

"that it was probable, *more likely than not,* that no tax was either collected or paid from the affidavits supporting this warrant alone." (Emphasis added.) We need not determine whether this statement reflects application of an erroneous standard because our review is *de novo.*

L.Ed.2d 667 (1978); *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir.1989). This court has clarified that *Franks* does not apply to challenges based on omissions from the warrant, except in the very rare instances where there is "a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir.1998) (emphasis in original).

Investigative records of the controlled purchases do not show additional controlled purchases from Hilltop Market for which sales tax was charged, but do include purchases from competitors in the area. Also, the affidavit included one controlled purchase for which sales tax was charged. Although Lewis was fired under accusations of theft, he first provided information to Keller while he was still employed at Spencer's Market. As for Mowery, there was a dispute about whether he was fired for theft or resigned after being pressured by Michael Spencer to "frame himself." We find the record in this case does not support a finding of an intention to mislead or that the challenged omissions were material to the probable cause determination.

## B. Keller's Appeal

■ After the searches in March 1995, the Ohio Department of Insurance assigned Linda Porter to investigate the State Farm Insurance Agency owned by Richard Spencer. Porter interviewed an employee of the insurance agency, who said employees were instructed to interview clients and sell insurance even though they were not registered insurance agents. She also said the agency had sold policies to Kentucky residents. Porter contacted Keller, who provided information and assistance to the investigation. Porter also talked with a State Farm representative who was investigating a claim submitted by Richard Spencer relating to a burglary of a warehouse he owned. State Farm provided Porter with over 500 insurance applications, which were reviewed to determine who had signed them and whether the customers were Kentucky residents.

In October 1995, Porter and Keller drafted applications for warrants to search the Insurance Agency of Richard Spencer; A–D & S Rentals, a rental agency owned by Richard and Sally Spencer; and the residence of Richard and Sally Spencer for evidence of insurance fraud and falsification in violation of Ohio law. *See* OHIO REV.CODE §§ 2913.47 and 2921.13(A)(10). The affidavits presented in support of each warrant were the same. When the first draft was shown to special prosecutor Rocky Coss, he suggested additional information be added to the affidavits. Coss resigned as a special prosecutor shortly thereafter and did not review the changes made to the affidavits.

On October 25, 1995, the warrant applications were presented to Judge Harcha by Keller, the affiant, and Porter. Judge Harcha questioned them extensively and had Porter add the following handwritten note to the affidavit in support of the warrant to search plaintiffs' residence: "Confidential informant # 1 stated he was in the house at Richard Spencer's request, to search for insurance records." That informant, Michael Sweeney, was a former employee of the insurance agency. Porter testified that Sweeney had also told her he moved insurance agency records to a storage area in the plaintiffs' home.

Accepting the magistrate judge's findings, the district court concluded that despite a number of failings in the affidavits supporting the warrants, there nonetheless was probable cause to believe the crime of falsification had been committed with re-

spect to automobile insurance purchased by one customer, Daniel Brown, who listed an Ohio address in the application even though he lived in Kentucky.[7]

The affidavit stated that examination of the State Farm insurance applications identified a total of eighteen individuals who allegedly conspired with Richard Spencer to obtain Ohio insurance using false addresses. The affidavit related specific allegations concerning two couples who were residents of Kentucky and had obtained Ohio insurance through Richard Spencer's agency. Although the district court found no probable cause with respect to the first couple for corporately owned vehicles, the court found there was probable cause to believe falsification was committed with respect to the insurance obtained by the Browns. The magistrate judge explained:

> Although the Brown vehicle may be corporately owned, that fact does not appear on the affidavit. All the affidavit alleges is that Brown obtained Ohio coverage for "his" vehicle and that he lives in Kentucky. To constitute proof of falsification or fraud, however, one must allege that the customer is charged more than would be the case if the vehicle were insured in Kentucky or that the carrier was paid less than it would be entitled had the vehicle been insured in Kentucky or that Spencer or his agency was in some way cheating someone somehow. The affidavit attempts to and does satisfy this requirement by stating that insurance applications were obtained from State Farm and that "these applications helped to identify Spencer's insurance clients who were allegedly falsely claiming to be Ohio residents

when actually they were residents of Kentucky" and that lower rates would be paid to State Farm by Ohio residents. The Brown[s] are listed as among the applicants, so the crime of falsification is properly alleged with reference to the Browns.

The court then concluded that it was "self-evident" that insurance records would be kept at the insurance agency.

With respect to the other two warrants, however, the court concluded that nothing in the affidavits established a nexus to either the plaintiffs' home or their rental business. First, it is apparent from the discussion of the issue that the magistrate judge confused the statement made by Mowery to establish the nexus to search Michael Spencer's home in March 1995 with the affidavit proffered to establish probable cause to search Richard and Sally Spencer's home in October 1995. The magistrate judge explained:

> Defendants rely on the fact that affiant Mowery had stated that he had seen Michael Spencer take business records to his car and that Michael Spencer had an office in his home. This, of course, has nothing to do with Richard and Sally Spencer.

The October 1995 warrant for plaintiffs' home, however, included the handwritten statement that an employee of the Spencer Insurance Agency had reported being asked by Richard Spencer to look for insurance files in plaintiffs' home. While the statement could have been more detailed, it certainly supported an inference that Richard Spencer thought insurance records could be found in his home.

With respect to the plaintiffs' rental business, which was located in the same

---

7. The magistrate judge found the affidavits were insufficient to establish probable cause to believe a false insurance claim had been made concerning the burglary at the ware-

house, and concluded that having unlicensed employees prepare applications and sell insurance may be unethical but did not constitute a criminal offense.

building as the insurance agency, the affidavit stated that two confidential informants reported that Sally Spencer prepared the payroll for the insurance agency and that personnel records for the insurance agency were stored at the rental agency. The district court's discussion of this warrant seems to have overlooked this fact, which supports a reasonable belief that business records for the insurance agency would be found in the offices of the rental agency owned by plaintiffs.

These additional facts, which were presented to the judge who issued the warrants, provide a basis for a reasonably prudent person to believe evidence of falsification or insurance fraud might be found on the premises to be searched. Thus, we believe the affidavits provided adequate nexus to establish probable cause to search plaintiffs' home and rental business for insurance records. Further, we find that even if there was not probable cause, the affidavits were not so lacking in indicia of probable cause as to render belief in its existence objectively unreasonable.

We REVERSE the decision to grant in part and deny in part the motions for summary judgment filed by plaintiffs and defendants to the extent that it denied qualified immunity to Richardson for the March 1995 warrant to search Hilltop Market and to Keller for the October 1995 warrants to search plaintiffs' home and rental business. The matter is REMANDED for further proceedings consistent with this opinion.