NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0422n.06

Case No. 16-2476

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 20, 2017
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| ERIC GUNNELS, | ) | |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| ROBERT KENNY, STUART WORTHING, ROY HATCHETT, ERIC ECKLES, and JASON PLETSCHER, | ) ) ) ) | |
| Defendants-Appellees. | ) ) ) ) | **OPINION** |

BEFORE: GIBBONS, ROGERS, and DONALD, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Eric Gunnels brought a suit under 42 U.S.C. § 1983 against police officers Robert Kenny, Stuart Worthing, Roy Hatchett, Eric Eckles, and Jason Pletscher in their individual capacities, alleging a "search and seizure without probable cause" in connection with the search of Gunnels's property in Clio, Michigan, on February 12, 2014, pursuant to a search warrant. A judge issued the warrant based on the officers' testimony that Gunnels was engaged in construction inside the building without proper permits under the Michigan Building Code. The district court granted summary judgment for defendants, denied Gunnels leave to amend his complaint to add further claims against Kenny in his official capacity, and dismissed the case. For the reasons that follow, we affirm the judgment of the district court.

I.

In 2013, Eric Gunnels purchased an old hardware store with an attached living quarters located in Clio, Michigan. When Gunnels purchased the building, the storefront portion still had remnants of the old hardware store. He bought the property with plans to rent out the front and live in the back residence. In early 2014, Gunnels started working on the property to make it habitable.

On January 22, 2014, Gunnels found a "building inspector notification" on the door of the property with the name and phone number of the Thedford Township building inspector, Stuart Worthing, listed, and a note from Worthing asking Gunnels to contact him. When the two spoke on the phone, Worthing told Gunnels that he understood Gunnels was doing construction on the property and he asked if Gunnels would like to schedule an inspection. Gunnels told Worthing that he had not done any construction work that required a permit but was just doing "cosmetic stuff . . . patching drywall and painting." According to Gunnels, Worthing responded that this was okay, and no appointment was made for a property inspection.

The following week, Worthing and Gunnels spoke on the phone again about Gunnels's construction at the property. Worthing mentioned that he had noticed a dumpster on the property, and Gunnels told him that he was just throwing away garbage from inside the hardware store and that he was not doing any construction, just some "painting and carpeting." Worthing asked if he could do a "walkthrough inspection" at that time, but Gunnels again declined because he claimed he was not doing any work that required a permit.

On February 12, 2014, Worthing arrived at the property while Gunnels was outside shoveling snow. Worthing again asked if he could do a walk-through of the building, but Gunnels refused. Worthing informed Gunnels that under the building code, he has the right to

enter any building under construction. When Gunnels challenged this authority, Worthing told him that he would leave a copy of the building code provisions in Gunnels's mailbox at the township offices. Following this exchange, Worthing left the premises but told Gunnels that he would return in twenty minutes.

When Worthing returned, he was accompanied by Officer Eric Eckles in a separate vehicle. Worthing asked Gunnels if he could search the property, but Gunnels again refused. At this point, Worthing stated that he had "complaints that [Gunnels was] doing construction without a permit" at the property. Gunnels denied that he was doing any construction and continued to refuse an inspection. After this conversation, Worthing left, but Eckles remained for approximately five hours sitting in his parked car across the street.

While Eckles sat in his car, Gunnels and several friends who were helping him with the building laid carpet inside. After a while, they took a dinner break during which Gunnels went out to get pizza. On his way back, Gunnels stopped by Eckles's car to offer him a slice, and Eckles said he was parked there "waiting on some 911 call." At this point, Gunnels testified that Eckles looked uncomfortable. During this time, Eckles also received a text message from the Chief of Police, Robert Kenny, regarding a suspicion of marijuana, although it is unclear to whom Kenny was referring.

After Gunnels returned to work inside the building, Kenny arrived in his personal vehicle, with Worthing following behind in his own car. Worthing joined Kenny in his vehicle, where they sat for approximately forty-five minutes. Gunnels exited the building and approached the vehicle. After a short exchange, Kenny told Gunnels that they were in the process of obtaining a search warrant to search the property. Gunnels reentered the building, and, a short while later, Officers Jason Pletscher and Roy Hatchett arrived at the property with a

search warrant. The search warrant, which was based on an affidavit submitted by Pletscher, found "reasonable and probable cause to believe that evidence of violations of the 2009 Michigan Building Code or criminal conduct, more specifically, remodeling or otherwise altering a building without a permit" would be found at the premises. The two officers gave Gunnels a copy of the search warrant and proceeded to search the building for about an hour.

During the search, Kenny observed that the two inner doors separating the hardware store from the attached residence had been screwed shut. Gunnels testified that he had screwed the doors shut when he realized the officers were getting a search warrant because he did not have a lock for the door of the residential portion and did not want them searching his entire residence. Kenny removed the screws and searched the residential portion of the building. In the residential portion, the officers observed open-wall cavities, plumbing and electrical fixtures removed, as well as a jack holding up a structural beam. Although these constituted building code violations, no citations were issued. However, a "stop work order" was placed on the building two days after the search, directing that work on the building be ceased and revoking the certificate of occupancy.

Gunnels did not attempt to respond to the building inspector about the stop-work order, but instead spoke with a supervisor who told him that, to get the order lifted, Gunnels would have to secure a building permit and get approval from a structural engineer. Following this conversation, Gunnels filed a § 1983 lawsuit alleging that the search of his property and the stop-work order amounted to an unlawful search and seizure under the Fourth Amendment. The district court granted defendants' motion for summary judgment. It also denied Gunnels's motion for leave to file an amended complaint. Gunnels now appeals.

II.

We review a district court's grant of summary judgment *de novo*. *Great Am. Ins. Co. v. E.L. Bailey & Co.*, 841 F.3d 439, 443 (6th Cir. 2016). Taking the evidence in the light most favorable to the non-moving party, summary judgment is appropriate if the pleadings and other evidence "show[] that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere presence of a scintilla of evidence in support of the non-moving party's position is insufficient. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). There must be evidence upon which a jury could reasonably find for the non-moving party. *Id.*

Normally, we review a district court's denial of a motion to file an amended complaint for an abuse of discretion. *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010). However, because the district court rested its denial, in part, on futility grounds, our review is *de novo*. *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 671 (6th Cir. 2003) (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 518 (6th Cir. 2001)).

A.

The Fourth Amendment protects persons from unreasonable searches and seizures and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Although exceptions exist, in order for a residential search to be constitutional, generally a warrant must be issued prior to the search. *See Katz v. United States*, 389 U.S. 347, 357 (1967). If a search warrant that indicates there is probable cause for a search is issued by a neutral and detached magistrate or judge, officers who rely on that facially

valid warrant are generally insulated from liability under § 1983 for Fourth Amendment violations.  *See Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005).

However, an officer cannot rely on a warrant if it was premised on the officer's knowing or reckless false statements, which were necessary to the judicial determination of probable cause.  *See Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243 (6th Cir. 1989).  Thus, a plaintiff may overcome an officer's qualified immunity in the Fourth Amendment context, despite that officer's reliance on a warrant, if the plaintiff can show that (1) the officer made the false statements knowingly and intentionally or with a reckless disregard for the truth; and (2) without the false statements or omissions, the remainder of the affidavit on which the warrant is based is insufficient to establish probable cause.  *Young v. Owens*, 577 F. App'x 410, 416 n.3 (6th Cir. 2014); *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) (citation omitted).  Because the officers relied on a warrant to search his property, Gunnels's claim can proceed only if such warrant was based on a knowing or reckless false statement and otherwise lacked probable cause.

Gunnels alleges that the warrant authorizing the search of his property was issued based on an affidavit that contained a false statement, and thus the officers' reliance on it cannot shield them from liability.  Specifically, Gunnels highlights the following statement in Pletscher's affidavit: "That your affiant has known since 2012 that Eric Gunnels was the owner of a medical marijuana dispensary . . . located . . . in Thedford Township."  Gunnels denies having any ownership interest in this marijuana dispensary, although he admits to having friends who own the facility and that he had "frequented there" to "socialize."

Viewing the facts in the light most favorable to Gunnels and assuming that he did not own the marijuana dispensary, he still cannot make a substantial showing that Pletscher made

these statements knowingly or recklessly. Given that Gunnels held a medical-marijuana card and, by his own admission, associated with the owners of the dispensary and socialized there often, it was not unreasonable for Pletscher to assume that Gunnels had an ownership interest in the dispensary. Furthermore, Gunnels has presented no evidence that Pletscher knew Gunnels's version of the facts or that he recklessly disregarded the facts when executing his affidavit.

But even if Gunnels could show that Pletscher knowingly or recklessly made a false statement in his affidavit, he cannot show that the allegedly false statement was necessary to the judicial determination of probable cause in the resulting search warrant. Pletscher's affidavit is more than a page long. The allegedly false statement takes up less than three lines within that affidavit. Even ignoring the statement, the affidavit contains ample evidence of Michigan Building Code violations that serve as probable cause to search Gunnels's property. For example, the affidavit contained the following statements:

> 5. That on 02/12/2014, your affiant was dispatched 14007 N. Lewis Rd., in Thedford Township, Genesee County, Michigan, to meet with Mr. Stuart Worthing, Thedford Township Building Inspector. Mr. Stuart told me that on or about January 22, 2014, he was called to [the address] to investigate a report that the buildings located on the premises were being remodeled or otherwise altered without a township permit. Mr. Stuart said that he saw construction materials on the premises, and that on that day he left a Stop Work Order at the site. Further, he said that the owner, Eric Gunnels, called him on January 28, 2014, and told Mr. Stuart that there was only minor painting and carpeting being done on the premises.
>
> 6. That on 02/12/2014, Mr. Stuart Worthing, Thedford Township Building Inspector, told your affiant that he stopped at [the building] on January 31, 2014, in response to a second call. Mr. Worthing said that on this occasion he saw construction materials, to-wit: drywall, 2X4 studs, and plywood on the premises.
>
> 7. That on 02/12/2014, Mr. Stuart Worthing, Thedford Township Building Inspector, told your affiant that he stopped at [the building] on February 12, 2014, at approximately 4:00 PM. Mr. Worthing said that he encountered the owner, Eric Gunnels, on the property. Mr.

7

> Worthing said he asked Mr. Gunnels if he could walk through the premises to inspect the work, and Mr. Gunnels refused to let Mr. Worthing enter the building. Mr. Gunnels told Mr. Worthing that he needed to call his lawyer. After making a telephone call, Mr. Gunnels told Mr. Worthing that he would not allow him to inspect the property. Mr. Worthing said that he called Thedford Township Police Chief Bob Kenny to request assistance because of the interference with his duties under Section 104.6 Right of Entry, of the 2009 Michigan Building Code.

Indeed, the search warrant stated that there was "reasonable and probable cause to believe that evidence of violations of the 2009 Michigan Building Code or criminal conduct, more specifically, remodeling or otherwise altering a building without a permit" would be found on the premises. Thus, it is apparent that the district judge could have solely relied on the evidence of building code violations, and not on evidence of drug activity, to find probable cause to search Gunnels's property. This makes sense given the affidavit's almost exclusive focus on the potential building code violations at Gunnels's property, as well as his obstruction of the inspector's duties.

Gunnels argues that violations of the Michigan Building Code cannot amount to criminal activity, and therefore that the warrant's mention of "criminal conduct" is a reference to Gunnels's marijuana activity. His argument is misguided. Under Michigan law, anyone who knowingly violates the building code, constructs a structure in violation of a condition of a building permit, or knowingly refuses or interferes with a building inspection has committed a misdemeanor, punishable by fine or imprisonment. M.C.L. § 125.1523. Because Gunnels has not shown that the allegedly false statements were made knowingly or recklessly, and because the warrant still contained probable cause for the search of Gunnels's property even absent those statements, the officers' search was constitutionally sound.

B.

The district court denied Gunnels's motion for leave to amend his complaint "because it [was] untimely and prejudicial to Defendants, given that the discovery period ha[d] long closed and, in any event, Plaintiff's proposed amendment of his Complaint would be futile." Although Federal Rule of Civil Procedure 15(a)(2) provides that a district court "should freely give leave [to amend a complaint] when justice so requires," that "right to amend is not absolute or automatic." *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 551 (6th Cir. 2008) (citation omitted). The district court should consider "undue delay in filing, . . . bad faith by the moving party, . . . undue prejudice to the opposing party, and futility of the amendment" when considering such a motion. *Seals v. Gen. Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008).

Here, the district court did not err in denying Gunnels's motion. Gunnels filed this suit on June 16, 2015. The court set a nearly six-month discovery period to end on February 1, 2016, and required all dispositive motions be filed by March 1. On February 29, 2016, defendants filed a motion for summary judgment, to which Gunnels responded. It was not until April 20, 2016, well after discovery had ended and well after the March 1 deadline for dispositive motions, that Gunnels filed his motion for leave to amend his complaint. In his proposed amendment, Gunnels added three new counts and attempted to add Kenny as a defendant in his official capacity. His new claims were based on a theory that the township's building-inspection policy, particularly its Right of Entry clause, was unconstitutional, and he sought both equitable relief and damages. Gunnels alleged that defendants had "developed and maintained a policy and custom of violation of the Fourth and Fourteenth Amendments through the use of an unconstitutional warrantless entry ordinance" and that the policy is "unconstitutional on its face and in its application to" Gunnels.

Gunnels offers no explanation for the delay in filing these additional claims. He sought to add entirely new claims against defendants more than two months after discovery had ended and more than a month after the dispositive-motions deadline. We have previously found that a motion to amend may be untimely and prejudicial where the plaintiff does not explain the lapse in time between his original complaint and seeking the amendment, where discovery has already closed, and where dispositive motions have already been filed or the filing date was fast approaching. *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 898–99 (6th Cir. 2006); *Duggins v. Steak 'n Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999).

Therefore, because Gunnels filed his motion to amend with undue delay and offered no explanation to account for his untimeliness, his motion was properly denied. Allowing Gunnels's amendment would at this point prejudice the defendants by requiring them to reopen closed discovery and litigate the township's building-inspection practices, something that was not at issue in the initial complaint.

III.

For the reasons stated above, we affirm the judgment of the district court.