NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0367n.06

No. 23-1329

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Aug 23, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| GEORGE MARVASO, et al., | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiffs-Appellants, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| RICHARD SANCHEZ, | ) | |
| | ) | OPINION |
| Defendant-Appellee. | ) | |
| | ) | |

Before: COLE, CLAY, and NALBANDIAN, Circuit Judges.

**CLAY, Circuit Judge**. In this 42 U.S.C. § 1983 action arising from an arson investigation, Plaintiffs appeal the district court's entry of summary judgment for Michigan State Police lieutenant Richard Sanchez based on qualified immunity. Plaintiffs claim that Sanchez drafted misleading affidavits that resulted in their homes being illegally searched. However, even after considering the omitted facts and excising the purported falsehoods from Sanchez's affidavits, probable cause nonetheless existed, meaning that no Fourth Amendment violation occurred. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual Background

On the morning of May 8, 2013, a fire broke out at Marvaso's Italian Grille in Westland, Michigan. The fire spread to the adjacent Electric Stick pool hall and charity poker facility. Both the restaurant and the pool hall are leased and operated by Plaintiffs George and Mary Marvaso,

whose children George "Geo" Marvaso Jr. and Sunday Gains are also Plaintiffs to this action and are employed by Electric Stick. Emergency services were called at approximately 8:16 am, and firefighters responded and entered the building within minutes. Although the firefighters successfully extinguished the fire, Firefighter Brian Woelke was unable to exit the building before it collapsed and tragically passed away as a result of smoke inhalation.

Several investigations into the cause of the fire followed. The Wayne-Westland Fire Department conducted an initial on-scene investigation, which revealed no evidence of accelerants or foul play. Shortly after, on May 9, 2013, two other investigators—one representing Plaintiffs' insurer and one representing Plaintiffs' landlord—each preliminarily concluded that the cause of the fire was "undetermined." Meanwhile, the Michigan Occupational Safety and Health Administration ("MIOSHA") investigated Woelke's death. Based on various violations of health and safety regulations, MIOSHA cited and fined the City of Westland. The Fire Department admitted these violations and paid the relevant fines.

Months after the fire, Fire Marshal John Adams—despite having uncovered no new evidence—suddenly concluded that there was an "incendiary cause" to the fire. Adams Report, R. 49-7, Page ID #793. This new conclusion represented a change in course from the on-scene investigation, which originally found no accelerants or other evidence of arson. Based on this altered determination that the fire was incendiary, Adams submitted a detailed report to the Michigan State Police ("MSP"), which opened a homicide investigation.

Lieutenant Sanchez participated in the investigation into the fire on behalf of MSP. Eventually, officers began to suspect Plaintiffs of starting the fire. After reviewing the available evidence, which included Adams' latest report, Sanchez submitted substantially identical affidavits in support of warrants to search each Plaintiff's home, Plaintiffs' business, and Plaintiffs' storage

2

unit. Among other supporting information, the affidavits noted that: (1) a Fire Marshal's report determined that the fire was arson; (2) several named sources tipped off police that the fire was "suspicious and most likely an arson fire"; (3) the doors of both businesses were locked at the time of the fire, indicating that "someone with a key had entered the establishment to ignite the fires"; (4) Plaintiffs were experiencing financial difficulties around the time of the fire; (5) Plaintiff George Marvaso had increased the coverage on his insurance policy covering the building a few months prior to the fire from $400,000 to $600,000; (6) Plaintiffs were allowed onsite after the fire was extinguished and were observed retrieving various documents and other items; and (7) managers of family-run businesses frequently store business records at their homes. Sanchez Aff., R. 56-3, Page ID #1578–80. A magistrate judge issued the warrant based on probable cause, and, shortly after, MSP officers executed the warrants at Plaintiffs' three respective homes. No charges were ever filed against Plaintiffs as a result of the searches.

## B. Procedural History

Plaintiffs filed two separate lawsuits related to the purportedly unlawful search of their homes. First, Plaintiffs filed suit under 42 U.S.C. § 1983 against Defendant Sanchez on July 13, 2018, alleging that Sanchez violated Plaintiffs' Fourth Amendment rights by falsifying information and making material omissions in his search warrant affidavits. On August 7, 2018, Plaintiffs also filed § 1983 claims against Fire Marshal Adams, as well as against retired Fire Chief Michael Reddy Sr. and then-current Fire Chief Michael Reddy Jr. In Plaintiffs' complaint against these three Defendants, they alleged that Adams, Reddy Sr., and Reddy Jr. conspired to violate their constitutional rights by filing a false report implying that Plaintiffs committed arson and triggering an unlawful homicide investigation. Plaintiffs alleged that the conspirators' motive centered upon deflecting media attention away from the Fire Department's inadequacies and safety violations.

3

The Defendants in both cases filed dispositive motions under Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 12(c). We previously affirmed the district court's denial of these motions, holding that the Defendants were not entitled to qualified immunity at the early motion to dismiss stage. *See Marvaso v. Sanchez*, 971 F.3d 599, 610 (6th Cir. 2020). On remand, the district court held a telephone conference to discuss the progress of the cases. Based on the parties' consent during this conference, the district court consolidated the two cases, reasoning that the actions involved a common question of law or fact under Federal Rule of Civil Procedure 42(a)(2).

After engaging in extensive discovery, all Defendants separately moved for summary judgment. The district court denied Adams' motion for summary judgment, and granted Reddy Sr.'s, Reddy Jr.'s, and Sanchez's respective motions for summary judgment. In particular, the district court found that genuine issues of material fact existed regarding whether Fire Marshal Adams violated Plaintiffs' Fourth and Fourteenth Amendment rights by knowingly fabricating the investigation report that concluded the fire was incendiary. Based on this dispute of fact, the district court denied Adams' motion for summary judgment. However, the district court found that, because Plaintiffs failed to proffer sufficient evidence that Defendants Reddy Sr. and Reddy Jr. engaged in a conspiracy, summary judgment could be entered in their favor. And as for Defendant Sanchez, the district court also granted summary judgment, finding that "no genuine issue of material fact exists as to whether Lt. Sanchez (1) had the requisite probable cause when drafting the affidavits, which he did, or (2) whether Lt. Sanchez made any material misrepresentations or omitted any material information, which he did not." Op. & Order, R. 62, Page ID #1827.

Plaintiffs have timely appealed only the grant of summary judgment to Defendant Sanchez. Accordingly, Reddy Jr. and Reddy Sr. are no longer Defendants in this consolidated case. The district court has stayed the trial against Adams pending the resolution of this appeal.

## II.  DISCUSSION

### A.  Jurisdiction

At the outset, Sanchez again argues that this Court lacks jurisdiction over Plaintiffs' appeal.[1] Normally, an order dismissing fewer than all of the defendants from an action is not a final appealable order. In this case, Sanchez argues that because Adams remains a defendant, we lack jurisdiction to hear Plaintiffs' appeal regarding Sanchez. However, Plaintiffs brought their claims against Sanchez through a separate complaint, and this Circuit has held that cases consolidated by the district court do not lose their separate identity. *See Beil v. Lakewood Eng'g & Mf'g Co.*, 15 F.3d 546, 551 (6th Cir. 1994) ("This Court has held that consolidated cases remain separate actions."); *Mansfield v. City of Murfreesboro*, 706 F. App'x 231, 233 (6th Cir. 2017) ("We have held that when a court consolidates two cases on its own, unlike when plaintiffs amend their pleadings to join actions that were initially brought separately, the consolidated cases 'remain separate actions,' thus allowing appeal from a final judgment in one action even if litigation in the other remains ongoing." (citation omitted)); *Lundblad v. Celeste*, 874 F.2d 1097, 1103 (6th Cir. 1989); *Klyce v. Ramirez*, 852 F.2d 568 (6th Cir. 1988) (unpublished table decision); *cf. Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496–97 (1933) ("[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.").

---

[1] Prior to the parties' appellate briefing, Sanchez filed a motion to dismiss Plaintiffs' appeal for lack of jurisdiction. We denied this motion, and Sanchez renews this argument.

One exception exists to this general rule. In some cases, plaintiffs choose to file a master amended complaint to supersede their previously filed separate complaints. *See, e.g.*, *Klyce*, 852 F.2d at *3 (holding that Court did not have jurisdiction because plaintiff filed a single amended complaint naming the six defendants that "supersede[d] the original," meaning the original complaint should be treated as "nonexistent"). Because an amended complaint supersedes the original complaint, this filing merges the suits into a single action. *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 456 n.4 (2009). In other words, had Plaintiffs filed an amended complaint that named all Defendants, this Court would dismiss for lack of jurisdiction, inasmuch as the district court's order granting summary judgment to only one defendant would clearly not be a "final appealable order." *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013).

But, in this case, Plaintiffs did *not* file an amended complaint. Instead, the district court itself ordered the cases consolidated. In addition, Defendants proceeded separately by filing separate motions for summary judgment. Accordingly, contrary to Sanchez's renewed arguments on appeal, this Court has jurisdiction over Plaintiffs' appeal.

**B. Standard of Review**

Turning to the merits of Plaintiffs' appeal, we review the district court's grant of summary judgment *de novo*. *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010). At the summary judgment phase, we must "view the facts and draw reasonable inferences in 'the light most favorable to the party opposing the summary judgment motion.'" *Shumate v. City of Adrian*, 44 F.4th 427, 438 (6th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)). If the evidence would allow a reasonable jury to find in favor of the non-moving party, summary judgment is not appropriate. *Id.* (citing *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986)).

To overcome a public official's claim of qualified immunity on summary judgment, Plaintiffs must show that the facts, taken in the light most favorable to them, would illustrate (1) that there was a violation of a constitutional right, and (2) that the right was clearly established at the time of the violation. *Schulkers v. Kammer*, 955 F.3d 520, 532 (6th Cir. 2020) (citation omitted). Although we have discretion to choose which prong of the qualified immunity inquiry to consider first, the parties here agree that it was clearly established at the time of Sanchez's alleged conduct that "[p]olice officers cannot, in good faith, rely on a judicial determination of probable cause when that determination was premised on an officer's own material misrepresentations to the court." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir, 2015) (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006)). Accordingly, we will focus on the first prong—whether Sanchez violated this clearly established right.

## C. Analysis

On appeal, Plaintiffs argue that Sanchez was not entitled to the protection of qualified immunity because he drafted misleading search warrant affidavits that resulted in their homes being illegally searched. According to Plaintiffs, Sanchez knowingly omitted key information and knowingly included false information in drafting the affidavits, which resulted in the execution of illegal search warrants that violated their Fourth Amendment rights. To support their argument, Plaintiffs list various factual omissions that they claim would have affected the magistrate judge's ultimate probable cause determination. However, with or without the consideration of the additional facts that Plaintiffs proffer, there would have been probable cause to search their homes. Because no Fourth Amendment violation occurred, we agree with the district court's determination that Sanchez is entitled to qualified immunity.

Although officers are generally shielded from liability under § 1983 when relying upon a facially valid search warrant, an officer cannot rely on a warrant "if it was premised on the officer's knowing or reckless false statements, which were necessary to the judicial determination of probable cause." *Gunnels v. Kenny*, 700 F. App'x 478, 481 (6th Cir. 2017) (citing *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989)). When a § 1983 plaintiff attempts to overcome an officer's qualified immunity in the Fourth Amendment context, despite that officer's reliance on a warrant, she can do so by: "(1) mak[ing] a substantial preliminary showing that the affiant knowingly, intentionally, or with reckless disregard for the truth included the false statement or omitted information, and (2) establish[ing] that the false statement or omission is material to a finding of probable cause." *United States v. Schumacher*, 611 F. App'x 337, 339–40 (6th Cir. 2015) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)); *see also United States v. Carpenter*, 360 F.3d 591, 596–97 (6th Cir. 2004) (en banc) ("But to be constitutionally problematic, the material must have been deliberately or recklessly omitted and must have *undermined* the showing of probable cause." (emphasis in original)). There is no constitutional violation—and a law enforcement official is thus entitled to qualified immunity—"if probable cause exists absent the false statement, or if probable cause exists despite the inclusion of the omitted statement[s]." *Shumacher*, 611 F. App'x at 340; *see also Bullock v. City of Detroit*, 814 F. App'x 945, 952 (6th Cir. 2020). And although whether probable cause exists in a § 1983 action usually presents a jury question, in this case, only one reasonable probable cause determination is possible. *See Tlapanco v. Elges*, 969 F.3d 638, 649 (6th Cir. 2020).

Applying these standards, even assuming that Plaintiffs have created a material dispute of fact as to whether Sanchez omitted information knowingly or recklessly, Plaintiffs have failed to show that the omitted information would have affected the probable cause analysis had it been

8

included.[2] *See Gunnels*, 700 F. App'x at 482 ("[E]ven if [the § 1983 plaintiff] could show that [the officer] knowingly or recklessly made a false statement in his affidavit, he cannot show that the allegedly false statement was necessary to the judicial determination of probable cause in the resulting search warrant."). Considering each piece of omitted information that Plaintiffs point to on appeal, probable cause nonetheless existed. Although Plaintiffs aver additional facts and details that provide helpful additional context to several portions of the affidavit, this further context is not exculpatory and does not meaningfully undermine the warrant's probable cause. *Cf. United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004) (explaining that courts should not scrutinize a warrant affidavit line-by-line; instead, courts must "consider whether the totality of the circumstances supports a finding of probable cause").

First, and perhaps most importantly, Plaintiffs argue that Sanchez withheld the reports of two other fire investigators that concluded that the fire classification was "undetermined," not "incendiary."[3] Yet, in writing his search warrant affidavits, Sanchez solely mentioned the most recent fire investigation report, which concluded that the fire was incendiary. Although Sanchez certainly should have provided the magistrate judge with the full picture of the various

---

[2] To be sure, Plaintiffs offered little to no evidence that these omissions were knowing or reckless, as this Court's precedent requires. *Carpenter*, 360 F.3d at 596–97 ("[T]o be constitutionally problematic, the material must have been deliberately or recklessly omitted[.]"); *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998) ("[E]xcept in the *very* rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." (emphasis in original)). Nonetheless, for purposes of summary judgment, we can assume that Plaintiffs have created a genuine dispute of material fact on this issue.

[3] The fire investigation industry defines an "incendiary" fire as "a classification of the cause of a fire that is intentionally ignited under circumstances in which the person igniting the fire knows the fire should not be ignited." Pl. Br., ECF No. 31, 16. Other possible fire classifications include "undetermined," "accidental," and "natural cause." Pl.'s Resp. Mot. Summ. J., R. 56, Page ID #1557.

investigations that had occurred, a status of "undetermined" does not rule out arson. In other words, two reports that failed to arrive at any conclusion at all do not negate or contradict the third report that concluded the fire was likely incendiary. And, without any reports directly contradicting the report that concluded foul play caused the fire, this third report serves as essential evidence to the determination of probable cause, even considering the other two reports. Further, even if the magistrate had the two "undetermined" reports, there was still likely enough evidence in the affidavit to clear the low bar of probable cause. *Cf. Gerstein v. Pugh*, 420 U.S. 103, 121 (1975) (holding that the probable cause determination "does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands"). Therefore, this omitted fact does not defeat the probable cause determination.

In addition, Plaintiffs dispute the accuracy of certain facts within the affidavit related to their financial troubles, including that (1) George Marvaso ("George") has been in bankruptcy proceedings since 2007; (2) George was experiencing financial difficulties at the time of the fire; (3) George was delinquent on property and business taxes owed to the City of Westland; and (4) George increased the coverage on his insurance policy a few months before the fire from $400,000 to $600,000. Plaintiffs provide further context in their briefing that makes these facts seem less inculpatory, such as that George was due to make his last tax payment to Westland, and that Plaintiffs' financial prospects had much improved. Plaintiffs also point out that they had recently made renovations and upgrades to their establishments. However, officers are not required to supplement their affidavits with every possible exculpatory detail. *See Mays*, 134 F.3d at 816 (holding that requiring officers to include all exculpatory information in a search warrant affidavit "places an extraordinary burden on law enforcement officers, compelling them to follow up and include in a warrant affidavit every hunch and detail of an investigation in the futile attempt

to prove the negative proposition that no potentially exculpatory evidence had been excluded"). Moreover, even considering these omitted facts related to Plaintiffs' financial situation, which serve only to provide additional context, Plaintiffs do not challenge that they had previously been in significant debt and had recently upped their insurance policy. And those facts, viewed along with the other inculpatory evidence provided by the affidavit, gave reasonable cause to believe that evidence of a crime would be found at Plaintiffs' homes. *Cf. Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

Finally, Plaintiffs argue on appeal that Sanchez did not sufficiently corroborate the information regarding certain witness' tips that he included in the affidavit. In particular, Plaintiffs challenge the affidavit's inclusion of a statement from Robert Mulka, who "knew that George Marvaso, Sr. was distraught over the fire because it was supposed to be an insurance job and no one was supposed to get hurt." Sanchez Aff., R. 56-3, Page ID #1578. According to Plaintiffs, Mulka "had not seen or talked to the Marvasos in years following his divorce from the Marvaso's daughter, Sunday Gaines," and therefore his uncorroborated and biased statement tainted the affidavit. Pl. Br., ECF No. 31, 28. Similarly, Plaintiffs argue that the tip from witness Robert Baldoni, which stated that the Marvasos caused the fire with leftover construction materials, should have been excluded from the affidavit because Baldoni was "simply repeating what other people were talking about." *Id.*[4]

While Plaintiffs correctly point out that officers are obligated to corroborate tips, this duty is particularly important when including information from unnamed, undisclosed sources.

---

[4] Although Plaintiffs blame Sanchez for including Baldoni's uncorroborated "bar talk," this shortcoming was explicitly recognized in the affidavit itself. Therefore, this cannot be considered an omission, let alone a material one—the magistrate judge had the complete facts in front of her and could assign the proper amount of weight to Baldoni's statements.

11

*See United States v. Waide*, 60 F.4th 327, 336 (6th Cir. 2023) (noting that the court must closely consider the informants' reliability when presented with hearsay information from an undisclosed source); *Hale v. Kart*, 396 F.3d 721, 729 (6th Cir. 2005) (distinguishing between anonymous tipsters and ordinary citizen witnesses, and explaining that, in the case of the latter, "no further investigation was required for the warrant to be sufficient"). Thus, the fact that Sanchez did not independently verify the reliability of Mulka and Baldoni—who were both known witnesses and specified by name in the affidavit—does not vitiate the affidavit's probable cause. *See Mays*, 134 F.3d at 815 ("An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation."); *Bullock*, 814 F. App'x at 952 (holding that § 1983 plaintiff failed to show that alleged omissions affected the probable cause inquiry because "[plaintiff] identifie[d] no case indicating that a police officer makes a recklessly misleading omission by failing to include concessions of all the additional investigative steps that the officer might have taken (but did not)"). And importantly, the magistrate judge's probable cause determination was certainly not based on these tips alone. Indeed, even completely excising the tips from both Mulka and Baldoni, probable cause still existed based upon the Fire Marshal's investigation report coupled with additional undisputed circumstantial evidence. *Cf. United States v. Perry*, 247 F. App'x 712, 715 (6th Cir. 2007) (rejecting defendant's argument that the police should have included additional information about the informant's credibility in the affidavit); *Spencer v. Sutterfield*, 66 F. App'x 569, 575–76 (6th Cir. 2003) (upholding search warrant for suspect's market even though officer omitted certain facts, such as the possible bias of witnesses whose statements were in the application); *United States v. Neal*, 577 F. App'x 434, 450 (6th Cir. 2014) ("Neal fails to establish . . . that [the officer's] alleged misstatement or material omission was necessary for the magistrate's probable cause determination.").

Because none of these details were critical to or undermined a probable cause finding, Plaintiffs have failed to meet their burden. *See Mays*, 134 F.3d at 816 (explaining that the omission of disputed facts will "very rare[ly]" warrant the re-evaluation of probable cause in a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978)); *Hale*, 396 F.3d at 727. In this case, even considering the omitted facts that Plaintiffs have identified, the undisputed and uncontradicted facts still establish probable cause for the challenged search warrants to issue. In particular, the parties do not dispute much of the information contained within the affidavits, such as (1) a named witness' report that a car that matched Geo Marvaso Jr.'s car was in the restaurant parking lot shortly before the fire; (2) the Fire Authority report that concluded the fire was "incendiary in nature"; (3) the observation that the business's doors were locked, "indicating that someone with a key had entered [] to ignite the fires"; and (4) Marvaso had increased the coverage on his insurance policy from $400,000 to $600,000 three to four months prior to the fire. Sanchez Aff., R. 56-3, Page ID #1578–79. These facts are sufficient to establish a reasonable belief that evidence related to the arson investigation might be found on the premises to be searched, thus meeting the "low bar" for probable cause. *See, e.g.*, *United States v. Moore*, 999 F.3d 993, 996–97 (6th Cir. 2021); *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009).

The fact that there were two other inconclusive fire reports, the fact that the Marvasos were purportedly on the brink of satisfying their debts, and the fact that the tips in the affidavits could have been further corroborated do not nullify the above-listed undisputed facts. Inclusion of the omitted information in the challenged search warrant affidavits does not dispel probable cause to search the properties. *Cf. United States v. Wright*, 131 F. App'x 471, 477–78 (6th Cir. 2005) (concluding that "even with the exclusion of the false information and the inclusion of the omitted material fact[s], the affidavit [was] sufficient to establish probable cause to search [the

defendant's] property"); *Burleigh v. City of Detroit*, 80 F. App'x 454, 458 (6th Cir. 2003) ("This alleged exaggeration of the facts need not detain us, however, if other undisputed facts support the state court's probable cause determination.").  As a result, no constitutional violation occurred, and Sanchez is entitled to qualified immunity.

### III. CONCLUSION

The district court properly determined that Sanchez was entitled to summary judgment based on qualified immunity.  After having received the benefit of discovery, Plaintiffs have failed to show that any alleged omissions from Sanchez's affidavit would have altered the lower court's probable cause determination.  For the reasons stated above, we **AFFIRM** the judgment of the district court.