RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0260p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────────

INNER CITY CONTRACTING, LLC,

　　　　　　　　　　*Plaintiff-Appellant*,

　　　*v.*

CHARTER TOWNSHIP OF NORTHVILLE, MICHIGAN;
FLEIS & VANDENBRINK ENGINEERING, INC. dba Fleis
& Vandenbrink,

　　　　　　　　　　*Defendants-Appellees*.

⎫
⎪
⎪
⎪
⎪
⎬  No. 22-2131
⎪
⎪
⎪
⎪
⎭

─────────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:22-cv-11349—Sean F. Cox, District Judge.

Argued:  October 18, 2023

Decided and Filed:  November 30, 2023

Before:  CLAY, KETHLEDGE, and MATHIS, Circuit Judges.

─────────────────────

## COUNSEL

**ARGUED:**  Cindy Rhodes Victor, THE VICTOR FIRM, PLLC, Southfield, Michigan, for
Appellant.  Kevin J. Campbell, CUMMINGS, MCCLOREY, DAVIS & ACHO, PLC, Livonia,
Michigan, for Appellee Charter Township of Northville.  Michelle A. Thomas, DICKIE,
MCCAMEY & CHILCOTE, P.C., Grosse Pointe Farms, Michigan, for Appellee Fleis &
Vandenbrink.  **ON BRIEF:**  Cindy Rhodes Victor, KUS RYAN, PLLC, Southfield, Michigan, on
the merits brief, THE VICTOR FIRM, PLLC, Southfield, Michigan, on the reply brief, for
Appellant.  Kevin J. Campbell, CUMMINGS, MCCLOREY, DAVIS & ACHO, PLC, Livonia,
Michigan, for Appellee Charter Township of Northville.  Michelle A. Thomas, DICKIE,
MCCAMEY & CHILCOTE, P.C., Grosse Pointe Farms, Michigan, for Appellee Fleis &
Vandenbrink.

———————————

**OPINION**

———————————

CLAY, Circuit Judge.  Plaintiff, a government contractor, brought suit against Defendants, a township and a consulting company, claiming racial discrimination after the consulting company allegedly made false and inaccurate statements about Plaintiff, leading Defendant township to award a government contract to a rival firm.  The suit alleged violations of Plaintiff's rights under the Constitution, federal statutes, and Michigan law.  The district court dismissed the case on the grounds that Plaintiff failed to state a claim under either 42 U.S.C. § 1981 or 42 U.S.C. § 1983 by failing to allege the racial composition of its ownership.  Further, the district court held that Plaintiff lacked standing to assert its constitutional claims, and that Defendant consulting company was not a state actor for purposes of § 1983.  For the reasons set forth below, we **REVERSE in part** and **AFFIRM in part** the district court's order dismissing the case and **REMAND** the case for further proceedings in accordance with this opinion.

## I.  BACKGROUND

### A.  Factual Background

Inner City Contracting ("ICC") is a Detroit-based contracting company.  In March 2022, the Charter Township of Northville, Michigan ("Township") solicited bids for the demolition of certain former hospital buildings.  ICC submitted the lowest bid, and Asbestos Abatement, Inc. ("AAI") submitted the second lowest bid, with a difference between the bids of almost $1 million.  ICC is a minority-owned business, and AAI is a white-owned business.  The Township hired consulting company Fleis & Vandenbrink ("F&V") to vet the bidders, make a recommendation as to which company should receive the contract, and manage the demolition project.

As part of the vetting process, F&V employee Trevor Woollatt conducted interviews with both companies and provided a checklist with comments about both companies to the Township.  ICC alleges that F&V made several factual errors in its checklist and comments about both ICC and AAI.  For instance, ICC claims that F&V falsely stated that AAI had no contracting violations,

that ICC did have such violations, that ICC had no relevant experience, that AAI did have relevant experience, and that AAI was not on a federal contracting exclusion list.

F&V recommended that AAI should receive the contract, citing AAI's superior presentation, more aggressive timeline, and more relevant experience, corroborated by AAI's references.  Relying on this recommendation, the Township awarded the contract to AAI.

## B.  Procedural History

On May 27, 2022, ICC filed a complaint against the Township and F&V in state court, alleging violations of the U.S. Constitution, federal statutes, and Michigan law and seeking injunctive and monetary relief.  The Township removed the case to federal court on June 17, 2022. On July 14, 2022, the Township filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that ICC did not have standing, that ICC did not sufficiently plead *Monell* liability, and that ICC did not sufficiently plead its equal protection and due process claims. The district court, without ruling on the motion to dismiss, entered an order allowing Plaintiff to amend its complaint.  ICC filed its amended complaint on August 17, 2022.  Both Defendants filed motions to dismiss.

The district court granted the motions to dismiss on November 22, 2022, finding that ICC did not allege sufficient facts to state claims of racial discrimination and equal protection violations, that F&V is not a state actor for purposes of § 1983 liability, and that ICC lacked standing to allege constitutional violations.  The district court declined to exercise supplemental jurisdiction over the state law claims and remanded them to state court.

## II.  DISCUSSION

## A.  Standard of Review

We review a 12(b)(6) dismissal *de novo*.  *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008).  Just as the district court, we "accept[] the plaintiff's factual allegations as true and view[] the complaint in the light most favorable to the plaintiff, but [are] not required to accept legal conclusions or unwarranted factual inferences as true."  *Moody v. Mich. Gaming Control Bd.*, 847 F.3d 399, 402 (6th Cir. 2017).

## B. Analysis

### 1. Constitutional Standing

"Standing is a threshold issue for bringing a claim in federal court and must be present at the time the complaint is filed." *Moody*, 847 F.3d at 402. Parties seeking to invoke the jurisdiction of federal courts must show that they have suffered an injury, that there is a causal connection between the injury and the complained-of conduct, and that the injury is redressable by a favorable decision by the courts. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). These requirements represent the "irreducible constitutional minimum" that Article III demands. *Id.* Without standing, a federal court has no jurisdiction to hear the case. Therefore, we must determine whether ICC has standing to assert its claims at the outset.

The Township argued that, as a disappointed bidder, ICC lacked standing to bring its federal claims. The district court agreed and held that, under Sixth Circuit precedent, "a disappointed bidder to a government contract generally lacks standing in federal court to challenge the bidding procedure or the award of a contract."[1] Op., R. 32, Page ID #1700. The general rule, first established by the Supreme Court in *Perkins v. Lukens Steel Company*, prohibits disappointed bidders from alleging general grievances regarding the awarding of government contracts. 310 U.S. 113, 125–28 (1940). Plaintiffs must "show an injury or threat to a particular right of their own," not just to "any general interest which the public may have in" good governance. *Id.* at 125. However, ICC's claim is not merely that of a disappointed bidder alleging issues with the bidding rules. ICC alleged racial discrimination, a claim seeking to vindicate its own rights rather than those of the public. Therefore, it has properly alleged a cognizable injury in fact that is not barred by *Lukens* and its progeny.

---

[1]Aside from the general rule regarding disappointed bidder standing, the district court relied on *United of Omaha Life Ins. Co. v. Solomon* to hold that, because a disappointed bidder to a government contract has no "legitimate claim of entitlement protected by due process," ICC had no standing here. 960 F.2d 31, 34 (6th Cir. 1992). But this confuses the standing inquiry with the merits of the due process claim. At this juncture, we are concerned only with whether the plaintiff has alleged a cognizable injury in fact—not whether there was a sufficient legally protected interest to support a due process claim.

The district court relied on our discussion of disappointed bidder standing in *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286 (6th Cir. 2006), *overruled on other grounds by Engquist v. Oregon Dep't of Ag.*, 553 U.S. 591 (2008). But such reliance was misplaced. In that case, while we repeated the general rule established by *Lukens*, we noted that "[t]he Court held that a disappointed bidder for a federal government contract did not have standing to sue the federal government *for violations of bidding rules contained in the Public Contracts Act*." *Club Italia*, 470 F.3d at 293 (citing *Lukens*, 310 U.S. at 125–26) (emphasis added). We cited the *Lukens* Court for the proposition that the plaintiffs in *Club Italia* suffered no invasion of or threat to their legal rights under the procurement statute. *Id.* at 293–94. We thus discussed the application of *Lukens* only to cases where disappointed bidders—who, as here, were unable to rely on the Administrative Procedures Act or similar legislation "which evinces a congressional intent" to give disappointed bidders standing—claimed a general injury as a result of failing to win a government contract. *Id.* at 294.

The context of *Lukens* matters. The plaintiffs in *Lukens* weren't disappointed bidders; they were seven iron and steel companies seeking to enjoin the federal government from applying the minimum wage provision of the Public Contracts Act, which would have affected their bottom line. *B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 717 (2d Cir. 1983). By the time *Lukens* reached the Supreme Court, the D.C. Circuit had enjoined the minimum wage provision from being enforced, not just against the plaintiff steel companies, but against *all* other steel and iron companies. Mila Sohoni, *The Lost History of the "Universal" Injunction*, 133 Harv. L. Rev. 920, 983 (2020). Thus, the Supreme Court was not confronting a disappointed bidder but an overly broad injunction. And the issue presented was the ability of government contractors generally to challenge the enforcement of procurement statutes, rather than the specific award of a specific bid.

Against this backdrop, the Supreme Court held that the plaintiffs did not have standing because government action resulting in damage or loss of income is neither "an invasion of recognized legal rights" nor "in itself a source of legal rights." *Lukens*, 310 U.S. at 125. And the plaintiffs were wrongfully attempting to vindicate a "general interest which the public may have in the construction of [the procurement statute]" which "was not enacted for the protection of sellers and confers no enforceable rights upon prospective bidders." *Id.* at 125–126. This

reasoning does not apply to a disappointed bidder alleging claims under established sources of legal rights (such as § 1981) which are enacted for the protection of and to confer enforceable rights upon individuals. *Lukens* itself articulated what is required of plaintiffs: "[r]espondents, to have standing in court, must show an injury or threat to a particular right of their own, as distinguished from the public's interest in the administration of the law." *Id* at 125. Thus, neither *Club Italia* nor *Lukens* bars all disappointed bidders from bringing their cases in federal court—just those who do not allege an injury specific to them, arising from law created for their protection, and apart from the generic injury of losing a contract award.

This holding does not depart from our prior case law. We have previously recognized that disappointed bidders who allege a concrete injury to themselves, not just on behalf of the public, have standing. *Compare Cincinnati Elecs. Corp. v. Kleppe*, 509 F.2d 1080, 1086 (6th Cir. 1975) (holding that an unsuccessful bidder, as a small business, had suffered an injury-in-fact and had standing under the APA to challenge an agency regulation related to small business contracts) *and Owen of Ga., Inc. v. Shelby Cnty.,* 648 F.2d 1084, 1090 (6th Cir. 1981) ("[U]nsuccessful bidders for government contracts have standing to invoke judicial review of adverse procurement decisions."), *with Hoke Co. v. Tenn. Valley Auth.*, 854 F.2d 820, 825 (6th Cir. 1988) (denying standing where disappointed bidder sued under the competitive bidding statute enacted on behalf of the public and did not allege an injury unto itself).

Because ICC has alleged "an injury or threat to a particular right of [its] own," as required by *Lukens*, we can proceed to the elements of a standing inquiry: injury in fact, causation, and redressability. In this case, taking the facts alleged in the complaint as true, ICC suffered a cognizable injury when it lost a lucrative award and profits as a result of alleged racial discrimination. Its injury was therefore twofold: the dignitary harm inherent in racial discrimination and the financial harm of the lost profit. *See, e.g.*, *Smith v. City of Cleveland Heights*, 760 F.2d 720, 723–24 (6th Cir. 1985) (recognizing a stigmatic injury as a result of a town's racially discriminatory housing policy); *Owen*, 648 F.2d at 1089 (holding that an unsuccessful bidder's loss of business and profits were a sufficient injury in fact). This injury, per the complaint, was traceable to Defendants' conduct. Because only ICC and AAI were finalists for the bid when the allegedly discriminatory conduct occurred, ICC has alleged enough to

establish, particularly at this early stage of the proceedings, that if not for F&V's allegedly discriminatory conduct, the Township would have awarded ICC the contract. Finally, these injuries are redressable by a favorable court decision, which can award monetary relief to compensate ICC for its injuries and grant the requested injunction prohibiting Defendants from violating ICC's constitutional rights. As a result, ICC has Article III standing to bring its claims, and we can proceed to the merits.[2]

### 2.  § 1981 Claims

#### a.  *Statutory Standing*

Whether a plaintiff can bring its claim under a particular statute used to be a discussion of "prudential standing," but is now, rather than jurisdictional, related to the validity of the cause of action. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014) ("[W]hether a plaintiff comes within the zone of interests [requires the Court] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim.") (internal quotation marks and citation omitted). F&V alleges that ICC does not have statutory standing to sue under § 1981 in part because ICC, as a corporation, lacks a racial identity and therefore "cannot be a direct target of racial discrimination claims." F&V's Br., ECF No. 23, 23. Whether corporations can allege a claim of racial discrimination under § 1981 is an issue of first impression for this Court. *See B & S Trans., Inc. v. Bridgestone Americas Tire Operations, LLC*, 758 F. App'x 503, 505 n.2 (6th Cir. 2019).

Almost every federal court of appeals has allowed corporations to allege racial discrimination, and none have established a contrary rule.[3] In particular, the D.C. Circuit held:

---

[2]Standing in federal court is a matter of federal, not state, law. *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013). We therefore need not analyze whether ICC would have standing in state court to bring its claims. Further, ICC argues that Supreme Court precedent regarding standing under the False Claims Act should apply. However, because ICC does not, and cannot, allege a claim under the False Claims Act, this argument also fails.

[3]*Des Vergnes v. Seekonk Water Dist.*, 601 F.2d 9, 14 (1st Cir. 1979); *Hudson Valley Freedom Theater, Inc. v. Heimbach*, 671 F.2d 702, 706 (2d Cir. 1982); *McClain v. Avis Rent A Car Sys., Inc.,* 648 F. App'x 218, 222 n.4 (3d Cir. 2016); *Woods v. City of Greensboro*, 855 F.3d 639, 645 (4th Cir. 2017); *White Glove Staffing, Inc. v. Methodist Hosps. of Dall.*, 947 F.3d 301, 305–06 (5th Cir. 2020); *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004); *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1072 (10th Cir. 2002); *Gersman v. Grp. Health Ass'n, Inc.*, 931 F.2d 1565, 1568 (D.C. Cir. 1991) *vacated on other grounds by* 502 U.S. 1068

"[I]f a corporation can suffer harm from discrimination, it has standing to litigate that harm." *Gersman v. Grp. Health Ass'n, Inc.*, 931 F.2d 1565, 1568 (D.C. Cir. 1991). Statutory standing depends on whether a plaintiff falls within the "zone of interests" of a statute, and a corporation with a claim under § 1981 can satisfy this "not especially demanding" requirement. *Lexmark*, 572 U.S. at 130 (citation omitted). The "zone of interests" test asks "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* at 127.

Applying this test in this case, § 1981 "protects the equal right of all persons within the jurisdiction of the United States to make and enforce contracts without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (internal quotation marks omitted). Where a corporation alleges that it was not awarded a contract on the basis of race, it clearly falls within the zone of interests protected by the statute. *See, e.g., Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053, 1060 (9th Cir. 2004) ("[I]f a corporation either suffers discrimination harm cognizable under § 1981, or has acquired an imputed racial identity, it is sufficiently within the statutory zone of interest to have prudential standing to bring an action under § 1981."). Therefore, we conclude that a corporation can satisfy statutory standing under § 1981.

F&V argues that dicta in the Supreme Court's decision in *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp*. prohibits corporations from alleging racial discrimination. In that case, the Supreme Court stated, "[a]s a corporation, [the plaintiff] has no racial identity and cannot be the direct target of the petitioners' alleged discrimination." 429 U.S. 252, 263 (1977). This line does not control this case for two reasons. First, the Court in *Arlington Heights* did not address *statutory* standing; its opinion concerned an alleged violation of the Fourteenth Amendment. Second, the Court found that another plaintiff had standing to assert the claims at issue, rendering

---

(1992). *See also*, *Triad Assocs., Inc. v. Chi. Hous. Auth.*, 892 F.2d 583, 591 (7th Cir. 1989) (corporation had standing to assert race discrimination claim under § 1983), *abrogated on other grounds by Bd. of Cnty. Comm'rs, v. Umbehr*, 518 U.S. 668 (1996); *Oti Kaga, Inc. v. S.D. Hous. Dev. Auth.*, 342 F.3d 871, 880–82 (8th Cir. 2003) (corporation had standing to assert race discrimination claim under Fair Housing Act).

The Eleventh Circuit has no established rule on whether corporations have standing to vindicate race discrimination claims under § 1981. *Sheba Ethiopian Rest., Inc. v. DeKalb Cnty.*, No. 21-13077, 2023 WL 3750710, at *9 (11th Cir. June 1, 2023) (holding that, for purposes of qualified immunity, there was no clearly established law in that circuit determining that officials are liable under § 1981 for discriminating against a corporation).

the language unpersuasive dicta irrelevant to the Court's ultimate holding. *See Carnell Const. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 715 (4th Cir. 2014) ("[T]he quoted language from *Arlington Heights* was surplusage unrelated to the Court's determination of the standing issue presented."); *Hudson Valley Freedom Theater, Inc. v. Heimbach*, 671 F.2d 702, 704 (2d Cir. 1982) ("[T]he sentence was of only academic importance and we do not believe that the Supreme Court would slavishly apply it so as to deny [the plaintiff] its day in court."). F&V's argument that Supreme Court dicta controls must fail, and we are left with persuasive precedent from sister Circuits that corporations have standing to allege violations of § 1981.[4]

### b. *Claim Against the Township*

Just because a plaintiff has standing to allege their claim does not mean they have sufficiently done so. *See, e.g., TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (discussing the differences between standing and a cause of action). Defendants claimed, and the district court agreed, that ICC did not allege sufficient facts to plead their § 1981 claims because ICC did not plead its race or intentional discrimination in the complaint. Further, the Township argued that ICC improperly brought its claims against the Township under § 1981 rather than § 1983. We agree with the latter argument, but not the former.

The Township challenged ICC's § 1981 claim on the basis that, against government entities, § 1981 claims must be made through § 1983. That is correct. We have held that "no independent cause of action against municipalities is created by § 1981(c)." *Arendale v. City of Memphis*, 519 F.3d 587, 599 (6th Cir. 2008) (citing *Jett v. Dallas Indep. Sch. Dist*, 491 U.S. 701, 733 (1989)). As a result, "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units . . . ." *Jett*, 491 U.S. at 733. Thus, we evaluate ICC's § 1981 claims against the Township under the § 1983 framework. And we analyze the sufficiency of ICC's § 1981 claims only as to ICC's allegations against F&V.

---

[4]More recently, when indirectly presented with the issue of whether corporations can bring suit under § 1981, the Supreme Court merely noted that "the Courts of Appeals to have considered the issue have concluded that corporations may raise § 1981 claims." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 473 n.1 (2006).

### c. *Claim Against F&V*

The Federal Rules of Civil Procedure require that a complaint be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must do more than state legal conclusions or recite the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 564 (2007). However, the complaint need only plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. And "we construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (citation omitted). Lastly and importantly, "the fact that this action was brought under one of the civil rights statutes requires us to scrutinize such a dismissal with special care." *Lucarell v. McNair*, 453 F.2d 836, 838 (6th Cir. 1972).

In evaluating ICC's claims, the district court used the standard from *Amini v. Oberlin College*: "[A] plaintiff must plead and prove that (1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a)." 440 F.3d 350, 358 (6th Cir. 2006). The district court incorrectly cast *Amini* as a prima facie standard rather than as the test for what plaintiffs must plead and ultimately prove. And the district court, in holding that ICC failed to allege discriminatory intent,[5] misapplied *Amini* to require a heightened showing of intentional discrimination that this Court's precedent does not require.[6] ICC did not need to prove discriminatory intent, but rather needed to allege facts making it plausible that such intent existed.

---

[5]The district court incorrectly held that Plaintiff could not prove discriminatory intent without alleging its own race or explicitly alleging that Defendants knew Plaintiff's racial identity.

[6]In fact, this Court has explicitly recognized that requiring plaintiffs to show intentional discrimination as part of their prima facie case could confuse litigants. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001) (including intentional discrimination as a part of a plaintiff's prima facie case is "inappropriate" and "propagates the false notion that a plaintiff must provide direct evidence of the defendant's intent to discriminate . . . ."). Indeed, although the trained litigator may recognize "intentional discrimination" encompasses both direct and circumstantial evidence, the undefined term has the potential to befuddle parties and courts alike—as this case clearly illustrates.

Because this issue has confused litigants and courts alike, we take the opportunity to clarify a plaintiff's burden when pleading a § 1981 claim. At the motion to dismiss stage, plaintiffs need only to point to facts that make plausible their allegations. *See Keys v. Humana, Inc*., 684 F.3d 605, 609 (6th Cir. 2012). In the § 1981 context, this means alleging sufficient facts to show that (1) the plaintiff belonged to a protected class; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in § 1981(a). *Amini*, 440 F.3d at 358. The second prong, regarding intentional discrimination, can be shown through either direct evidence of discrimination or circumstantial evidence "which would support an inference of discrimination." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). Where plaintiffs seek to make their contract discrimination case using circumstantial evidence, they will have to do so—after they proceed past the pleadings—using the prima facie standard as described in *Keck v. Graham Hotel Sys., Inc*. 566 F.3d 634, 639 (6th Cir. 2009) ("(1) they belonged to a protected class; (2) they sought to make a contract for services ordinarily provided by the defendant; and (3) they were denied the right to enter into a contract for such services while similarly situated persons outside the protected class were not, or they were treated in such a hostile manner that a reasonable person would find it objectively discriminatory."). The familiar burden-shifting framework from *McDonnell Douglas Corp. v. Green* will then apply. 411 U.S. 792 (1973).

In this case, ICC met its preliminary burden. First, ICC alleged that it belonged to a protected class when it included in its complaint that "[a]s a minority-owned entity, ICC is a member of a suspect class." Am. Compl., R. 19, Page ID # 1119. In addition to ICC's allegation that it is a minority-owned entity, ICC claimed that a white-owned company was treated differently. And ICC sought to vindicate rights under § 1981, a statute which provides that all citizens have the same rights to make an enforce contracts as white citizens.

ICC met the intentional discrimination prong by alleging that it submitted a bid for this government contract, but Defendants treated ICC differently than the similarly situated, white-owned AAI.[7] In particular, ICC alleged that its bid was almost $1,000,000 cheaper than AAI's

---

[7]While the *Keck* prima facie standard uses language that specifies that plaintiff sought to make a contract with the *defendant*, the fact that ICC did not seek to make a contract with F&V does not affect the validity of ICC's

bid. These facts, taken together and liberally construed in favor of ICC, plausibly allege that ICC was denied the right to contract, while AAI was not, as a result of inaccurate statements allegedly made on the basis of race.[8] Thus, ICC satisfied *Amini*'s third prong. As the Supreme Court recently held, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). ICC met this requirement by alleging that, since ICC and AAI were the only two bidders being evaluated, but for F&V's allegedly discriminatory actions, ICC likely would have been awarded the contract.

The district court, in holding to the contrary, required ICC to meet standards not required by our precedent. According to the district court, ICC's complaint was deficient because it "fail[ed] to include any factual allegations to identify 'Plaintiff's race' or the races of any of its member-owners." Op., R. 32, Page ID #1695. But the district court cites no in-circuit case for the proposition that failing to allege the specific race of the plaintiff is fatal to a § 1981 claim. We do not require civil rights plaintiffs to use magic words in their complaints to obtain relief. Rather, we require plaintiffs to state a claim for relief. *See, e.g.*, *Knapp v. City of Columbus*, 93 F. App'x 718, 720 (6th Cir. 2004) ("The court's duty is to look to the facts and grant the necessary relief as justice requires—not to demand that certain citations or phrases are used."). The Federal Rules of Civil Procedure, as well as Supreme Court and Sixth Circuit precedent, seek to protect the goals of notice pleading. ICC alleged sufficient facts, claiming rights under statutes that protect against racial discrimination, to give F&V "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002).

Whether ICC can prove its allegations and survive a motion for summary judgment is a different story. *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*

---

§ 1981 claim against F&V. Courts have heard cases involving plaintiffs seeking to vindicate their rights under § 1981 against third parties who interfere with those rights, even if they were not party to the contract. *See, e.g.*, *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375 (1982); *Sutton v. Bloom*, 710 F.2d 1188 (6th Cir. 1983).

[8]In addition, the district court held, "there are no allegations that either of the Defendants knew the races of Plaintiff's member-owners," which the district court claims are required for a showing of intentional discrimination in the complaint. Op., R. 32, Page ID #1695. In this case, ICC includes sufficient facts—namely that F&V and ICC met over Zoom—that, taken together and construed in Plaintiff's favor, establish that F&V would have been aware of ICC's race.

*by Harlow v. Fitzgerald*, 457 U.S. 800 (1982), ("[I]t may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."). But we "cannot dismiss for factual implausibility. . . ." *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 630 (2009). After discovery and additional proceedings, ICC may very well prove a set of facts that entitle it to relief: that F&V, motivated by ICC's race, lied about ICC on the checklists, leading the Township to award the contract to AAI. ICC may have included more legal conclusions than might be set forth in the ideal § 1981 complaint. But complaints need not be perfect. They need to state a claim for relief sufficient to give the defendants notice of what they are being accused. ICC has done so here.

### 3.  § 1983 Claims

For F&V to be liable under § 1983, ICC must carry its burden of proving that F&V is a state actor. For the Township to be liable under § 1983, ICC must carry its burden of proving that the Township is susceptible to *Monell* liability. ICC must also allege sufficient facts for viable equal protection and due process claims. It did none of these things.

#### a.  *State Actor*

Typically, liability under § 1983 lies only if the defendant is a government entity. *Flagg Bros. v. Brooks*, 436 U.S. 149, 156 (1978) ("[M]ost rights secured by the Constitution are protected only against infringement by governments."). To bring a claim against a private actor under § 1983, ICC must allege that F&V was a state actor for purposes of § 1983. ICC must therefore show that F&V's actions "so approximate state action that they may be fairly attributed to the state." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). ICC claims that F&V's actions are fairly attributable to the state under either the public function test or the nexus test. Under the public function test, the private actor must exercise powers which are traditionally reserved exclusively to the state. *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). Under the nexus test, there must be a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself. *Id.* The burden is on the plaintiff to show that the private actor meets either test. *See Nugent*

*v. Spectrum Juv. Just. Servs.*, 72 F.4th 135, 141 (6th Cir. 2023); *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995).  ICC has not met this burden.

ICC alleges that, because the Township delegated the duty of awarding the government contract to F&V, and because awarding government contracts is a traditional public function, it has satisfied the public function test.  However, "very few functions fall into that category." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1929 (2019) (internal quotation marks and citation omitted).  The few that do, such as holding elections (*Terry v. Adams*, 345 U.S. 461 (1953)), running a company town (*Marsh v. Alabama*, 326 U.S. 501 (1946)), and providing healthcare for incarcerated people (*West v. Atkins*, 487 U.S. 42 (1988)), bear little similarity to this case.

In the instant case, F&V did not award the government contract, as ICC suggests, but rather reviewed proposals and made a recommendation.  Such actions are not exclusive to the government and thus are not traditional public functions.  *See, e.g., Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) ("Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."); *Halleck*, 139 S. Ct. at 1932 ("Numerous private entities in America obtain [government contracts]. If those facts suffice to transform a private entity into a state actor, a large swath of private entities in America would suddenly be turned into state actors . . . .").  Even if *awarding* a contract, as opposed to evaluating contract bids, constituted a traditional and exclusive prerogative of the state, ICC admits in its complaint that the Township retained final authority over this function.  Therefore, ICC did not allege that F&V operated as a state actor under the traditional public function test.

Next, ICC alleges that F&V's actions satisfy the nexus test because "the Township was intimately involved in the challenged private conduct."  Appellant Br., ECF No. 19, 30.  ICC argues that "F&V acted as the Township Department Director, working intimately with the Township." *Id.* at 31.  And in its complaint, ICC claims that "The Township engaged in inadequate supervision of F & V and Woollatt" and that "[a]s the Township's agent, the actions and statements of F & V and Woollatt can be fairly attributed to the Township." Am. Compl., R. 19, Page ID

# 1119. But ICC makes no showing that the Township "has provided such significant encouragement of" F&V's alleged racial discrimination. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Therefore, ICC has not met its burden to demonstrate that F&V is a state actor under the nexus test. Since F&V is not a state actor, it cannot be liable under § 1983, and ICC's claims against F&V under § 1983 were properly dismissed.

### b. Monell *Liability*

Local governments are liable under § 1983 not where a local government's employee or agent inflicts an injury but where an "execution of a government's policy or custom inflicts the injury." *Arendale*, 519 F.3d at 599 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)) (cleaned up). ICC does not describe an official policy or custom on the part of the Township that has deprived ICC of its constitutional rights. Rather, ICC alleges that "the Township Board did no investigation into whether the award to AAI was in the best interest of the Township." Am. Compl., R. 19, Page ID # 1118. However, Sixth Circuit and Supreme Court case law demand more than an allegation of a single instance of a failure to investigate. *See, e.g.*, *Rizzo v. Goode*, 423 U.S. 362 (1976) (no § 1983 liability where plaintiffs only alleged a failure to act); *Daniels v. Williams*, 474 U.S. 327 (1986) (no § 1983 liability where plaintiff claimed injury by negligence); *Memphis Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898 (6th Cir. 2004) (no *Monell* liability where plaintiff claimed only negligence). Thus, ICC is unable to hold the Township responsible for claims under § 1983 because of its failure to sufficiently plead *Monell* liability.

### c. *Equal Protection and Due Process Claims*

Even if ICC had properly alleged that F&V was a state actor and that the Township was liable under *Monell*, it would still have had to properly allege its equal protection and due process claims. But ICC failed to do so. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (citation omitted), *abrogated on other grounds by Albright v. Oliver*, 510 U.S. 266 (1994). ICC has not sufficiently alleged that a state actor intentionally discriminated against it. ICC's chosen

defendants are a private actor who allegedly discriminated, and a state actor who did not commit any acts of discrimination—crucially, not a state actor who intentionally discriminated. Therefore, ICC has not alleged an equal protection claim under § 1983.

ICC's claim that it was deprived of its procedural and substantive due process rights under § 1983 also must fail. A successful § 1983 claim requires showing a deprivation of a protected life, liberty, or property interest without proper procedure. *Women's Med. Pro. Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). In order to have a recognized property interest in a government contract, a disappointed bidder must establish "that it was actually awarded the contract at any procedural stage or that local rules limited the discretion of state officials as to whom the contract should be awarded." *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 34 (6th Cir. 1992). ICC pleaded neither. To the contrary, the Township's policies gave it wide latitude to award the contract to any bidder, even if they were not the lowest bidder. Therefore, ICC's § 1983 claims must fail for lack of a cognizable due process claim, lack of a meritorious equal protection claim, and failure to sufficiently plead either *Monell* liability or that F&V was a state actor.

## CONCLUSION

Plaintiff had standing to bring its claims, and it sufficiently pleaded a claim under § 1981 against Defendant F&V. But all of Plaintiff's other federal claims must fail. Therefore, we **REVERSE in part** the district court's order dismissing Plaintiff's claims for lack of standing and Plaintiff's claim against F&V under § 1981 and **AFFIRM in part** the district court's dismissal in all other respects, and **REMAND** the case for further proceedings in accordance with this opinion.