NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0449n.06

Case No. 23-4040

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Nov 07, 2024

KELLY L. STEPHENS, Clerk

|   |   |   |
|---|---|---|
| DAVID DURHAM, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| JERRY NIFFENEGGER and MARK PURDY, in | ) | DISTRICT OF OHIO |
| their individual and official capacities as employees | ) | |
| of the Warren County Sheriff's Office; JAMES | ) | |
| CHRISTIAN, in his individual and official | ) | O P I N I O N |
| capacities as an employee of Target; TARGET | ) | |
| CORPORATION; WAL-MART STORES, INC.; | ) | |
| SCOTT HOLLOPETER, | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: COLE, MATHIS, and BLOOMEKATZ, Circuit Judges.

COLE, Circuit Judge. After investigating David Durham for reselling stolen goods, police searched Durham's businesses and seized cash and various merchandise. After being indicted in relation to the theft, Durham went to trial and prevailed. The state failed to prove its case against Durham, so the state trial court dismissed the criminal case. Durham then sued various law enforcement officers, retail corporations, and retail theft investigators, bringing various state law claims and federal claims under 42 U.S.C. § 1983. All defendants moved for summary judgment on all claims. The district court granted the summary judgment motions, and Durham appealed. We conclude the district court erred in holding that Durham's state law claims were judicially

estopped, so we reverse the district court's judgment on the state law claims. We affirm the judgment in all other aspects.

I.

After Sentel Brooks was apprehended for shoplifting at Home Depot, he informed a Home Depot investigator that he had been stealing products from Target and Walmart and reselling them to stores through a process known as "fencing." "Fencing" is a type of criminal scheme whereby a "fence"—a store—knowingly purchases stolen merchandise and sells the merchandise at low prices to consumers.

With Brooks's information, the Warren County Sheriff's Office launched an investigation into a suspected fencing operation in December 2015. Walmart and Target, along with their respective investigators, Scott Hollopeter and James Christian, assisted with the investigation. Brooks also agreed to help with the investigation to avoid any charges for shoplifting. The sheriff's office focused its investigation on Durham, who owned and operated three retail stores where he bought and resold used video games and related merchandise.

From the sheriff's office, Detective Jerry Niffenegger led the investigation and Detective Mark Purdy worked on the investigation in an undercover capacity. Walmart and Target provided merchandise to the sheriff's office to use in controlled sales.

The investigation into Durham took several months. From December 2015 through February 2016, Brooks and Detective Purdy participated in controlled sales with Durham, selling Durham merchandise in sealed packaging from both Target and Walmart. In one instance, after Brooks sold Durham video game merchandise in sealed packaging from Target, Durham offered to sell Brooks firearms. The sheriff's office verified that Durham resold the merchandise in his stores.

Following this investigation, both Detectives Niffenegger and Purdy signed affidavits in support of search warrant applications for two of Durham's retail locations. The affidavits summarized the controlled sales, detailed the property provided by Walmart and Target, and stated that Durham offered to sell Brooks firearms during one of the controlled sales. A state court judge issued both search warrants. (Games Galore Search Warrant, R. 144-5, PageID 1455; Traders World Search Warrant, R. 144-6, PageID 1461.) The warrants authorized the search of the locations for "any items obtained and/or received through the commission of a crime," including the various gaming systems, games, and controllers in their original packaging. (*Id.*)

The following day, officers entered one of Durham's stores to execute the search warrant with weapons drawn. One unidentified officer entered the store with a loaded shotgun, which he pointed at Durham for approximately thirty seconds. Officers ordered Durham to the ground, where he remained for less than one minute before an officer handcuffed him. Durham remained handcuffed for about ten minutes. He did not suffer any physical injuries during the search. Detective Niffenegger later explained that officers were armed during the search because they had received information that Durham may have firearms at the store. Consistent with the search warrant, the sheriff's office seized property sold to Durham through the controlled sales and other property that appeared stolen. After the search had concluded, Hollopeter and Christian (the investigators for Walmart and Target, respectively) arrived at the scene to help identify Walmart's and Target's property.

The officers then searched the second retail store owned by Durham. Again, the sheriff's office seized suspected stolen property consistent with the search warrant. Hollopeter and Christian identified the property provided by Walmart and Target. The officers provided Durham an itemized list of the property seized from both stores.

In August 2016, a grand jury indicted Durham on five counts of receiving stolen property in violation of Ohio Revised Code § 2913.51(A). In October 2016, while the criminal case was pending, the sheriff's office returned some of the seized property to Walmart and Target. Then, in April 2017, after the state presented its evidence, the trial court dismissed Durham's criminal case. The state had failed to uphold its burden of proof, and the court granted Durham's motion for judgment of acquittal under Rule 29 of the Ohio Rules of Criminal Procedure.

Approximately one month later, Durham moved for the return of his property in the criminal court, requesting law enforcement either return "all the money and property" or instead monetarily reimburse him for the property. (Mot. for Return of Property, R. 142-5, PageID 1020–23.) Durham attached a list of the money and property at issue. (*Id.* at 1022–23.) At the hearing on Durham's motion, the parties informed the court that they had reached an agreement regarding the money and property. (Hr'g Tr., R. 158-2.) The parties signed an agreed entry, which Durham's counsel explained was for "all the property that was seized from [Durham]." (*Id.* at PageID 2599.) The court entered the agreed order. In accordance with the agreed order, the sheriff's office returned the available seized property: $574.13 seized from Durham's cash register and $320 for "unavailable" seized property.

In February 2018, Durham sued Detectives Niffenegger and Purdy, Walmart, Target, Christian, and four John Does, seeking damages on various claims. Specifically, Durham pressed federal claims under 42 U.S.C. § 1983 for unreasonable search and seizure, excessive force, malicious prosecution, deprivation of due process, and violations of the First Amendment. He also pressed state law claims, including for theft, conversion, unjust enrichment, false imprisonment and false arrest, and malicious prosecution. Walmart, Target, and Christian moved to dismiss the case. The district court dismissed all claims against them except Durham's claims against

Christian under 42 U.S.C. § 1983 and his state law claims for conversion, unjust enrichment, and civil conspiracy against Walmart, Target, and Christian. Detectives Niffenegger and Purdy, on the other hand, opted to answer the complaint. Durham then moved for leave to amend his complaint to identify John Doe 1 as Walmart's theft investigator, Hollopeter. The district court granted the motion but permitted only Durham's supplemental state law claims for conversion, unjust enrichment, and civil conspiracy to proceed against Hollopeter.

After years of litigation, all the defendants moved for summary judgment. The district court granted their motions and dismissed Durham's amended complaint with prejudice. Durham now appeals.

## II.

We review a grant of summary judgment de novo. *Zakora v. Chrisman*, 44 F.4th 452, 464 (6th Cir. 2022). A district court may grant summary judgment only when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Durham appeals the district court's grant of summary judgment on (1) his state law claims for civil theft, conversion, unjust enrichment, and civil conspiracy, (2) his claims under 42 U.S.C. § 1983 against Detectives Niffenegger and Purdy, and (3) his claims under 42 U.S.C. § 1983 against Christian.

## A.

We turn first to Durham's state law claims. Durham brought state law claims for civil theft, conversion, unjust enrichment, and civil conspiracy against all defendants. The court initially permitted Durham to proceed with his claims for conversion, unjust enrichment, and civil conspiracy against all defendants and with his civil theft claims against Detectives Niffenegger and Purdy. But the district court ultimately granted summary judgment in favor of all defendants

for all claims. As relevant here, the district court held that Durham's civil theft, conversion, and unjust enrichment claims were barred by judicial estoppel because Durham sought to advance a position that was inconsistent with the resolution of the state criminal action in which he had reached an agreement with the state regarding his seized property.

The equitable doctrine of judicial estoppel generally prohibits a litigant from "convincing a court to adopt one position at one time and then seeking the opposite position at a later time," and it typically applies where a party "takes conflicting positions across different cases." *Mackey v. Rising*, 106 F.4th 552, 567 (6th Cir. 2024). The doctrine attempts to "protect the integrity of the judiciary" by preventing parties from convincing two courts of contradictory positions and, thus, deceiving one of the two courts. *Audio Technica U.S., Inc. v. United States*, 963 F.3d 569, 575 (6th Cir. 2020). Because the doctrine "precludes a contradictory position without examining the truth of either statement," we apply it "with caution to avoid impinging on the truth-seeking function of the court." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990).

The Supreme Court has explained that courts look to three factors when deciding whether judicial estoppel applies in a particular case. First, courts look to whether the party's later position and earlier position were "clearly inconsistent." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (citations omitted). Second, courts examine whether the party "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position" in the later proceeding would create the appearance that one of the two courts was misled. *Id.* (citation omitted). Finally, courts ask whether the party seeking to assert an inconsistent position would "derive an unfair advantage" if not estopped. *Id.* at 751. Courts have discretion when deciding whether to bar a claim under this doctrine, but we typically require affirmative answers to the above questions before judicially estopping a party. *Chaney-Snell v. Young*, 98 F.4th 699,

712 (6th Cir. 2024). Pertinent here, we may judicially estop claims in civil proceedings, even when the issue was determined in an earlier criminal proceeding. *See Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568 (1951).

Durham asserts that the district court erred in holding that his state law claims were judicially estopped. He argues that because the state criminal court merely signed off on his settlement with the state, the court did not actually accept his prior litigating position. Citing *Teledyne*, he contends that the doctrine of judicial estoppel does not apply where litigation is resolved through settlement, including through agreed orders, because when a court signs an agreed entry, it generally does not accept the terms the entry contains. 911 F.2d at 1218–19**.**

In *Teledyne*, we determined that the National Labor Relations Board ("NLRB") was not judicially estopped from suing a company for wrongfully discharging two striking workers for employee misconduct during a strike. *Id.* at 1215–19. Although the NLRB had previously sought to enjoin the same employees for misconduct during the strike, we reasoned that the prior court had not accepted the NLRB's prior position because the agreed entry that settled the complaint against those employees "contained no findings," and the court's entry of the agreed orders "did not constitute acceptance of them for purposes of judicial estoppel." *Id.* at 1219.

We agree with Durham. Following the dismissal of his charges for receiving stolen property, Durham moved for the return of his money and property that was seized during the searches of his two retail locations. His motion included a list of the relevant property and monies. Durham and the state then negotiated an agreed entry, and that agreed entry resolved the litigation. Like the agreed order in *Teledyne*, the agreed entry between Durham and the state did not contain any findings of law or fact; nor did the state court inquire into the substance of the agreement during the hearing it held concerning Durham's motion for the return of his property. The state

court, therefore, merely entered the agreed orders; it did not accept Durham's prior position that the agreed entry accounted for all the seized property.

Defendants rely on *Reynolds v. Commissioner*, 861 F.2d 469 (6th Cir. 1988), to distinguish this case from *Teledyne*. But we are unpersuaded. In *Reynolds*, we upheld the application of judicial estoppel to terms of a settlement entered by the bankruptcy court, relying on the bankruptcy court's "affirmative obligation to apprise itself of the underlying facts and to make an independent judgment as to whether the compromise is fair and equitable." 861 F.2d at 473. Defendants argue that the statutorily required hearing in this case similarly requires the court to examine the substance of the agreement. *See* Ohio Rev. Code Ann. § 2981.03(A)(4). The statute to which defendants point, however, does not impose such a duty on the court; it requires the court to hold a hearing on the motion, but not to evaluate the substance of the settlement. *See id.* Here, at the beginning of the required hearing, the state court inquired whether the parties had reached an agreement or sought a full hearing. (Hr'g Tr., R. 158-2, PageID 2598.) Because the parties indicated they had reached an agreement, the state court requested Durham's counsel read the agreement into the record and asked who was preparing the entry. (*Id.* at PageID 2598–2602.) The state court did not "apprise itself of the underlying facts" or "make an independent judgment" as to the fairness of the agreement. *Reynolds*, 861 F.2d at 473.

We accordingly hold that the district court erred in applying judicial estoppel to Durham's state law claims and reverse the district court's order granting the defendants' motions for summary judgment on these claims.[1]

---

[1] The defendants argue that Durham's state law claims were unsupported by the record and Ohio law, justifying the district court's grant of summary judgment on these claims even without its estoppel ruling. But the district court did not substantively address the merits of Durham's state law claims. We thus decline to address them in the first instance.

B.

Durham next appeals the district court's order granting summary judgment to Detectives Niffenegger and Purdy on Durham's federal claims under 42 U.S.C. § 1983. "Section 1983 provides a cause of action against any person who, under color of state law, deprives an individual of any right, privilege, or immunity secured by the Constitution and federal law." *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996). But qualified immunity shields government officials from liability for civil damages under § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). At the summary judgment stage, we view the facts in the light most favorable to the plaintiff and conduct a two-pronged inquiry, asking (1) whether the plaintiff has created a material question of fact that the officers' conduct violated plaintiff's constitutional rights, and (2) whether the constitutional right at issue was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted).

Durham contends the district court erred in concluding that Detectives Niffenegger and Purdy were entitled to qualified immunity on three alleged Fourth Amendment violations: unlawful search and seizure, excessive force, and malicious prosecution. We disagree.

*Search and seizure*. First, Durham argues that Detectives Niffenegger and Purdy were not entitled to qualified immunity because they drafted misleading search warrant affidavits that resulted in searches of his businesses without probable cause.

The Fourth Amendment prohibits "unreasonable searches and seizures" and requires that search warrants be supported by "probable cause." U.S. Const. amend. IV. A search warrant is supported by probable cause when the search warrant affidavit "shows a 'fair probability' that the

police will find evidence in the place they seek to search." *United States v. Ruffin*, 979 F.3d 528, 531 (6th Cir. 2020) (quoting *United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018)). In reviewing whether a search warrant was supported by probable cause, we assess only the information contained within the four corners of the affidavit. *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016). We consider that information in its totality. *See Hines*, 885 F.3d at 923.

Officers are generally shielded from liability under § 1983 when they rely upon a facially valid search warrant, but an officer cannot rely on a warrant "if it was premised on the officer's knowing or reckless false statements, which were necessary to the judicial determination of probable cause." *Gunnels v. Kenny*, 700 F. App'x 478, 481 (6th Cir. 2017) (citing *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989)). Where an officer relied upon a facially valid warrant, a plaintiff may overcome qualified immunity if they can "(1) make[] a substantial preliminary showing that the affiant knowingly, intentionally, or with reckless disregard for the truth included the false statement or omitted information, and (2) establish[] that the false statement or omission is material to a finding of probable cause." *United States v. Schumacher*, 611 F. App'x 337, 339–40 (6th Cir. 2015) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)).

Before the district court, Durham did not make a "substantial preliminary showing" that Detectives Niffenegger and Purdy knowingly or intentionally made any false statements or omitted information in reckless disregard for the truth. Durham argued only that Detectives Niffenegger and Purdy did not sufficiently corroborate various testimony of the confidential informant, Brooks. In support of that contention, Durham claimed that Detectives Niffenegger and Purdy had a recording that directly contradicted some of Brooks's statements. But, as the district court explained, Durham did not explain which statements in the affidavit were contradicted by the supposed recording. The district court, therefore, found there was no evidence "that would

establish . . . Niffenegger and Purdy's intention to mislead the judge." Op. and Order, R. 184, PageID 3684.

On appeal, Durham offers a robust list of additional alleged misrepresentations and omissions contained in the search warrant affidavits. Assuming these new arguments were not forfeited on appeal, Durham would still fail to show that the allegedly false and omitted information would have undermined the judge's finding of probable cause. *See, e.g., Gunnels*, 700 F. App'x at 482. Even if the allegedly false statements were removed, the affidavit would still detail the controlled sales which demonstrated that Durham purchased property that appeared stolen and then resold that same property. And, even if the officers had included the allegedly omitted information in the affidavits, it would not negate a finding of probable cause. Much of the information that Durham contends should have been included relates to the reliability of the confidential informant, Brooks. But because Brooks was a known witness, the lack of corroboration "does not vitiate the affidavit's probable cause." *Marvaso v. Sanchez*, No. 23-1329, 2024 WL 3913182, at *5 (6th Cir. Aug. 23, 2024); *see also Lester v. Roberts*, 986 F.3d 599, 609 (6th Cir. 2021). Further, the judge's probable cause determination was not solely based on the informant's tips; various officers also participated in the controlled sales detailed in the affidavit. *See id.*

The remaining alleged omissions generally relate to Durham's involvement in illegal activity. Specifically, Durham contends that the affidavit should have included exculpatory information, including the fact that none of the informants ever told Durham the merchandise was stolen and that Durham told Detective Purdy that everything he did had to be legal. Durham's argument is unavailing. As we have explained, the affidavit detailed multiple controlled sales where Durham purchased property in its original packaging and with intact security devices. Even

if the officers had included the alleged omissions, the affidavits would nonetheless have established probable cause. The district court correctly concluded that Detectives Niffenegger and Purdy were entitled to qualified immunity on the unreasonable search and seizure claim. Thus, we affirm the district court's grant of summary judgment to Detectives Niffenegger and Purdy as to Durham's unreasonable search and seizure claim.

*Excessive force*. Next, Durham asserts that Detectives Niffenegger and Purdy were not entitled to qualified immunity as to Durham's allegations that they acted with excessive force during the search when "a ten-person law enforcement squad . . . rush[ed] Durham and point[ed] a gun at his face." (Appellant Br. 37.)

The use of excessive force in the execution of a search warrant constitutes a Fourth Amendment violation. *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010). When determining if an officer utilized excessive force, the court "balances the government's interest in preventing crime and protecting the public and the officers against a suspect's interest in avoiding injury." *Gambrel v. Knox County*, 25 F.4th 391, 400 (6th Cir. 2022). To assess how this balancing plays out for a particular use of force, we consider the totality of the circumstances, including "whether the officers were investigating a serious crime; whether the suspect posed a safety threat; and whether the suspect was resisting arrest." *Id.* We evaluate the reasonableness of the use of force from the perspective of a reasonable officer, recognizing that officers "are often forced to make split-second judgments" in tense and evolving situations. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).

The district court determined that "Durham provide[d] no evidence that . . . Niffenegger and Purdy pointed firearms at him when executing the search warrant of his store." (Op. and Order, R. 184, PageID 3686.) Although Durham had contended that an officer had pointed a

cocked shotgun at him, he explained during his deposition that he did not know who, in particular, had done so. Durham accordingly could not connect the allegedly excessive force with Detectives Niffenegger and Purdy specifically. Durham argues that because no individual deposed can remember who pointed the shotgun at Durham, and we must construe the evidence in a light most favorable to him, it would be "reasonable" for us to find that Detectives Niffenegger or Purdy pointed the shotgun. But there is no evidence for us to construe: Durham does not dispute the fact that none of the deposed parties remember who pointed the shotgun and, while he can identify Detectives Niffenegger and Purdy as participants in the search, Durham admitted he was unable to identify the person that pointed the shotgun at him. (Durham Dep., R. 142, PageID 884.) We therefore affirm the district court's grant of summary judgment to Detectives Niffenegger and Purdy as to Durham's excessive force claim.

*Malicious prosecution*. Durham next asserts that the district court erred in granting Detectives Niffenegger and Purdy qualified immunity on his malicious prosecution claim. We have recognized malicious prosecution as a constitutional claim "encompass[ing] wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006)). To succeed on a Fourth Amendment malicious prosecution claim under § 1983, a plaintiff must prove (1) "a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute"; (2) "there was a lack of probable cause for the criminal prosecution"; (3) the plaintiff suffered a deprivation of their liberty within the meaning of our Fourth Amendment jurisprudence as a result of the proceeding; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Id.* at 308–09 (alterations and internal quotation marks omitted).

On appeal, Durham fails to meaningfully develop any argument against Detective Purdy. In his opening brief, he references Detective Purdy only in a heading and in his summary of the trial court's decision. And he does not reference Detective Purdy in his reply. We accordingly limit our review to Durham's claim against Detective Niffenegger. *See Geboy v. Brigano*, 489 F.3d 752, 766–67 (6th Cir. 2007) (declining to address claims where the appellant failed to suggest "any defects in the district court's dismissal of the[] claims").

Durham acknowledges that a malicious prosecution claim fails if there was probable cause to prosecute, but he asserts that the officers lacked probable cause because the search warrant affidavits contained misleading statements and omissions. As discussed above, however, the search warrants were supported by probable cause. Durham fails to otherwise assert that probable cause to prosecute was lacking. We accordingly affirm the district court's grant of summary judgment to Detectives Niffenegger and Purdy as to Durham's malicious prosecution claim.

C.

Finally, Durham challenges the district court's grant of summary judgment to Christian. Durham argues that the district court erred in concluding that Christian—a theft investigator for Target—is not a state actor under 42 U.S.C. § 1983. The Fourth and Fourteenth Amendments protect only against state action, generally limiting liability under § 1983 to governmental actors. *See Inner City Contracting, LLC v. Charter Township of Northville*, 87 F.4th 743, 757 (6th Cir. 2023). Therefore, to bring a claim against Christian under § 1983, Durham must show that Christian's conduct (1) deprived him of a federal right and (2) was "fairly attributable" to the state. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Durham bears the burden of demonstrating that Christian's conduct was state action. *See Inner City Contracting, LLC,* 87 F.4th at 757.

We need not address whether Christian's actions were "fairly attributable" to the state because Durham cannot show that Christian deprived him of any federal rights. On appeal, Durham asserts that Christian conspired with state actors, Detectives Niffenegger and Purdy, in the investigation and the ensuing searches, seizure, and arrest, and thus violated Durham's Fourth Amendment rights. Specifically, he contends that Christian "search[ed] through Durham's property and identif[ied] and seiz[ed] anything that he decided was stolen, without explanation or good faith basis." (Appellant Br. 41–42.) But Durham's argument relies on the same alleged unreasonable search and seizure violation to establish his § 1983 claim. And, as we have explained, Durham has failed to show that his Fourth Amendment rights were violated. Durham's claim against Christian accordingly fails.

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment to Detective Niffenegger, Detective Purdy, and Christian on the claims under 42 U.S.C. § 1983, reverse the district court's grant of summary judgment to all defendants on the state law claims for civil theft, conversion, unjust enrichment, and conspiracy, and remand these state law claims for further proceedings consistent with this opinion.