NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0030n.06

No. 23-3406

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JOSEPH LETA, SR.; NICOLE LETA; SHERRIDEN WEIL, | ) ) ) | **FILED** Jan 22, 2024 KELLY L. STEPHENS, Clerk |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| TRIHEALTH, INC.; BETHESDA FAMILY PRACTICE CENTER; CONSTANCE ZIMMER, Practice Manager; LORRAINE A. STEPHENS; KAITYLN STEFFENSMEIER; RICHARD A. OKRAGLY, JR.; JANE DOES 1–5, | ) ) ) ) ) ) | COURT FOR THE SOUTHERN DISTRICT OF OHIO OPINION |
| Defendants-Appellees. | ) ) ) | |

Before: McKEAGUE, LARSEN, and MURPHY, Circuit Judges.

LARSEN, Circuit Judge. Hamilton County Department of Job and Family Services (JFS) removed Joseph and Nicole Leta's five children from their care and placed them in foster homes. Thereafter, the Letas received notice that three of their children had medical appointments. But when they arrived at the Bethesda Family Practice Center (BFPC) in Hamilton County, Ohio, on the day of the appointments, neither the Letas nor the children's grandmother were permitted to be present in the exam room. Instead, they were escorted from the premises by local police. In the meantime, medical staff administered vaccinations to two of the children, with the consent of their foster caregiver, but contrary to the Letas' wishes. The Letas and the children's grandmother brought 42 U.S.C. § 1983 claims against the foster caregiver, Hamilton County, JFS, BFPC, its parent company TriHealth, Inc., and several employees of these entities, alleging violation of their constitutional rights. The district court dismissed the claims as to all defendants. During the

pendency of the appeal, the parties settled nearly all the claims. We are left to resolve only the claims against BFPC, TriHealth, and several of their employees. Because these private medical providers are not state actors who can be sued under § 1983, we AFFIRM.

I.

The district court dismissed the complaint at the Federal Rule of Civil Procedure 12(b)(6) stage, so "the factual allegations in the complaint are what matter." *Gen. Motors, LLC v. FCA US, LLC*, 44 F.4th 548, 551 (6th Cir. 2022). We accept them as true. *Id.*

In January 2020, JL2, the three-year old son of Joseph and Nicole Leta, "woke up from a nap and slipped out of the house alone while his mother and siblings were in other rooms." R. 7, Amended Complaint, PageID 33. A neighbor reported JL2's escape to local police, who then called JFS. "For reasons not relevant to this action, all five children [JL1, NL1, AL, NL2, and JL2] were soon removed from the Leta home, placed in the interim custody of JFS by the Hamilton County Juvenile Court, and thereafter assigned by JFS to multiple foster homes." *Id.* JL1, AL, and JL2 were placed with foster caregiver Cheryl Sakhi. On September 2, 2020, Mr. Leta received a text message from Bailee Brown, the JFS caseworker for the Leta family. Brown informed Mr. Leta that JL1, AL, and JL2 had medical appointments at BFPC the next day; the Letas were told they could attend. BFPC is owned and operated by TriHealth, Inc.

The Letas and the children's grandmother, Sherriden Weil (collectively "the Leta family"), went to BFPC at the appointed time the next day. Due to COVID-19 protocols, space in the examination room was limited to two adults; Mr. Leta suggested that Mrs. Leta and Sakhi be permitted to attend.

Sakhi then arrived, accompanied by her teenage daughter, JL1, AL, and JL2. The previous day, Sakhi, who had never met the Letas, had "called BFPC to warn the office staff that there could

'be trouble'" if the Letas came to the appointment. *Id.* at 34. And after entering the waiting room, an incident occurred between Sakhi's teenage daughter and Mrs. Leta. Sakhi's daughter was holding JL2. Mrs. Leta reached for JL2 twice, and both times Sakhi's daughter told Mrs. Leta not to touch her. Mrs. Leta was, however, able to "t[ake] possession of her son." *Id.* at 35. The Leta family says that "[a]ny physical contact between" Sakhi's daughter and Mrs. Leta "was unintended . . . and completely incidental to the act of taking [the] child." *Id.*

The Letas believed Sakhi "to be unhappy" with the Letas' presence at the appointment, "and before long," Sakhi "approached the front desk." *Id.* "Sensing trouble over who would be permitted in the exam rooms," Mr. Leta tried, unsuccessfully, to reach his lawyer, JFS caseworker Brown, and others by phone. *Id.* When the time came for the appointment, only Sakhi and her teenage daughter were allowed to accompany the children into the exam room.

The Leta family was "sitting in the waiting room calm and silent" when police officers arrived and told them they had to leave BFPC. *Id.* at 36. They cooperated with the police and did not cause a scene as they were escorted out.

Back in the exam room, BFPC staff administered vaccines to two of the Leta children, "directly contrary to [the Letas'] explicit denial of consent known to all Defendants and recorded in the TriHealth/BFPC medical records from March 2020." *Id.* at 37–38 (emphasis omitted). The March 2020 records reveal that, during a prior medical appointment, Sakhi had informed the treating physicians that Mrs. Leta did not consent to the vaccinations, but the medical records also contained a consent for treatment, including vaccinations, signed by Sakhi.

Pursuant to 42 U.S.C. § 1983, the Leta family sued foster caregiver Sakhi, and two groups of defendants. One group included various government actors: Hamilton County; JFS; Brown; and various other JFS employees. We refer to this group collectively as "JFS." The other group

included private medical organizations and individuals: TriHealth, Inc.; BFPC; Constance Zimmer, the practice manager for BFPC; Lorraine Stephens, M.D.; Kaitlyn Steffensmeier, M.D.; and Richard Okragly, Jr., M.D. We refer to this group collectively as "TriHealth." The Letas alleged that defendants violated their constitutional rights to access and control their children's medical care, while the Leta family alleged that defendants violated their constitutional rights to be free from unreasonable seizures. The district court dismissed the claims as to all defendants, and the Leta family appealed. The Leta family subsequently settled their claims with nearly all defendants, leaving only the TriHealth defendants as part of this appeal.

## II.

We review de novo a district court's dismissal for failure to state a claim under Rule 12(b)(6). *Gen. Motors*, 44 F.4th at 558. "We construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citation omitted).

## A.

The Letas claim that the TriHealth defendants violated their constitutional rights by denying them access to and control of their children's medical care.[1] The district court dismissed this claim on the ground that the TriHealth defendants are not state actors. We agree and, as a result, do not discuss whether, or to what extent, the Letas retained a constitutional right to access

---

[1] The Letas also claimed that the TriHealth defendants "violated their right to free exercise of religion when they vaccinated two Leta children without the Letas' consent." *Leta v. Hamilton Cnty. Dep't of Job & Fam. Servs.*, -- F. Supp. 3d --, 2023 WL 2788833, at *10 (S.D. Ohio Apr. 5, 2023). The district court dismissed this claim, but the Letas do not challenge that ruling on appeal, *see id.* at 10–11, so they have forfeited any challenge to it, *see Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018).

and control their children's medical care while the children were temporarily in state custody, or whether that right was violated by any state actor.

Section 1983 creates a cause of action for the violation of federal rights by a person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. In rare circumstances, private actors may also be liable under § 1983, but only when the plaintiff can show that the private party's actions "so approximate state action that they may be fairly attributed to the state." *Inner City Contracting, LLC v. Charter Township of Northville*, 87 F.4th 743, 757 (6th Cir. 2023) (citation omitted). Generally, we look to three tests to determine whether private action has become state action: (1) the public-function test, (2) the state-compulsion test, and (3) the nexus test. *See Weser v. Goodson*, 965 F.3d 507, 516 (6th Cir. 2020). A plaintiff may also show state action by establishing "that a private party has engaged in a conspiracy or concerted action with other state actors." *Id.*; *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970).

The Letas rest exclusively on a conspiracy theory to show state action. To hold a private party liable under § 1983, the plaintiff must show that the private actor "willfully participate[d] in joint action with state agents." *Weser*, 965 F.3d at 516 (citation omitted). The plaintiff must "alleg[e] that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007); *see also Rudd v. City of Norton Shores*, 977 F.3d 503, 517 (6th Cir. 2020). "A complaint must identify the alleged conspiracy with more than vague and conclusory allegations." *Rudd*, 977 F.3d at 517 (citation omitted); *see also Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) ("It is well-settled that conspiracy claims must be pled with some degree of specificity. . . ." (citation omitted)).

The allegations in the amended complaint fail to show that the TriHealth defendants conspired with any government actor to deny the Letas of their due process rights. So the Letas have not shown that any of the TriHealth defendants became state actors for the purposes of the § 1983 claim.

We can easily clear a few defendants from the deck. As the district court explained, the Letas did not allege that "the TriHealth physicians—Dr. Stephens, Dr. Okragly, or Dr. Steffensmeier—were present at the medical office" on the day of the appointment, or that they had any involvement in the events of that day. *Leta v. Hamilton Cnty. Dep't of Job & Fam. Servs.*, -- F. Supp. 3d --, 2023 WL 2788833, at *9 (S.D. Ohio Apr. 4, 2023). The Letas lodge no objection to this conclusion, meaning that no claim against the TriHealth physicians can lie.

As for TriHealth, BFPC, and BFPC practice manager Zimmer, the complaint fails to allege that any government actor and any of these defendants "shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights."[2] *Revis*, 489 F.3d at 290. To be sure, the complaint does allege that "Defendants TriHealth, BFPC, Dr. Stephens, Dr. Steffensmeier, Dr. Okragly, Defendant Sakhi, and possibly Defendant Zimmer, individually and jointly, all in joint participation and coordination with Defendants JFS, [Sandi] Webster and/or Brown, made the decision to inject AL and JL2 [with] several vaccines," R. 7, Amended Complaint, PageID 37, and that the TriHealth defendants, "individually or through their joint participation and/or conspiracy with the JFS Defendants, are private sector entities and individuals who are now state actors," *id.* at 41. But these allegations do not suffice. "[C]onclusory allegations unsupported by material

---

[2] To the extent that the Letas allege that TriHealth or BFPC are responsible for their employees' actions under the doctrine of respondeat superior or vicarious liability, that argument is foreclosed by our caselaw. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996).

facts will not be sufficient to state [a conspiracy] claim under § 1983." *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 563 (6th Cir. 2011) (citation omitted). And the complaint offers little in the way of material facts suggesting an agreement between the TriHealth defendants and the government to violate the Letas' rights.

The complaint alleges nothing by way of communication between any government actor and the TriHealth defendants prior to the appointment. Sakhi, the foster mother, called prior to the appointment to alert BFPC that the Letas might cause "trouble" at the appointment. R. 7, Amended Complaint, PageID 34. There is no allegation that Sakhi discussed vaccinating the children on the call. And, importantly, the district court determined that Sakhi is not a state actor. *See Howell v. Father Maloney's Boys' Haven, Inc.*, 976 F.3d 750, 753 (6th Cir. 2020) ("Across the country, there's near uniformity that foster homes do not count as state actors."). The Letas have not challenged that conclusion.

As for the day of the appointment, the complaint does not allege that any government actor was present that day.[3] Nor does the complaint allege that any government actor knew the children would be vaccinated that day; or that any state actor had any communication with any TriHealth defendant regarding vaccinations.

What the complaint does allege is that when the Leta family arrived, a BFPC employee remarked to a colleague, "These are the people that Cheryl [Sakhi] called about yesterday." R. 7, Amended Complaint, PageID 34 (alteration in original). In the waiting room, Sakhi's teenage daughter, who was holding JL2, and Mrs. Leta had a conflict as Mrs. Leta twice attempted to reach

---

[3] Although the complaint says that Brown gave the directive to the TriHealth defendants to call the police, the complaint does not allege that she was present at the facility. Indeed, the complaint alleges that Mr. Leta left the waiting room and "walked outside to call his attorney, Defendant Brown, and others to prevent [Mrs. Leta] from being shut out." R. 7, Amended Complaint, PageID 35.

out for her son. Sakhi's daughter "rudely" told Mrs. Leta, "Don't touch me," though "[a]ny physical contact between" Mrs. Leta and the teenager was "unintended . . . and completely incidental to the act of taking [the] child." *Id.* at 35. Shortly thereafter, Sakhi approached the front desk. And a short time later, three local police officers arrived and told the Leta family they had to leave, despite the fact that, when the officers arrived, they were sitting quietly in the waiting room. Brown gave the directive to either TriHealth, BFPC, or Zimmer to call the police to remove the parents. There is no allegation that Brown (or any government actor) and any TriHealth defendant ever discussed vaccinating the children.

Then, according to the complaint, TriHealth, BFPC, "and possibly Defendant Zimmer, individually and jointly, all in joint participation and coordination with" JFS, made the decision to vaccinate two of the children, contrary to the Letas' wishes. *Id.* at 37. When asked, after the fact, "how the vaccinations occurred," a JFS employee told the Letas that "[o]ur agency attorney indicated your objection to getting your children's vaccination has been heard and ruled on by the Juvenile Court." *Id.* at 38. The Letas say that this was a lie. The medical records reveal that, at a prior appointment in March 2020, Sakhi had informed treating physicians that Mrs. Leta did not consent to the vaccinations, but the medical records also contained a consent for treatment, including vaccinations, signed by Sakhi. That is the extent of the TriHealth defendants' involvement.

Based on these allegations, there is no indication that the TriHealth defendants and any government actor arrived at a "meeting of the minds" to deprive the Letas of their constitutional rights. *Adickes*, 398 U.S. at 158. There are no allegations that the TriHealth defendants ever discussed vaccinating the children with any government actor or that they agreed to assist any government actor in vaccinating the children without proper consent. While either TriHealth,

BFPC, or Zimmer took Brown's direction to call the police, that lone allegation cannot support the inference of a conspiracy between Brown (or another government defendant) and the TriHealth defendants to unlawfully vaccinate the children. And while the medical records reveal that Sakhi informed a TriHealth physician at a prior appointment that Mrs. Leta did not consent to the vaccinations, the medical records also contained a consent form signed by Sakhi. As for the allegation that JFS lied to the Letas about having obtained a court order permitting the children's vaccinations, there is no indication in the complaint that JFS said anything to the TriHealth defendants about a court order. And if JFS had repeated this lie to the TriHealth defendants, it would tend to defeat, not support, the claim that they conspired with the government to violate the Letas' rights. *Cf. Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 869–70 (10th Cir. 2016) (state officers who "facilitate[d] entry to [private property] on the false representation" that federal "inspectors had a court order to enter the facility" were not engaged in a § 1983 conspiracy with the inspectors). In sum, the allegations do not plausibly link the TriHealth defendants and any government actor to a common plan designed to deprive the Letas of their constitutional rights. *Revis*, 489 F.3d at 290. Absent such a meeting of the minds, *see Adickes*, 398 U.S. at 158, the conspiracy claim fails.

The Letas say that the Supreme Court's decision in *Adickes* supports their claim. There, the Supreme Court determined that, "in light of the sequence" of events, and the "unexplained gaps in the materials submitted by" the defendant, a jury could infer a conspiracy to discriminate on the basis of race from the fact that a police officer was present in a restaurant when the owner refused a patron service on the basis of race, using "a prearranged tacit signal" to the server, and the officer then arrested the patron on baseless vagrancy charges. *Id.* at 153–54, 158. The Letas posit that "[i]f the *Adickes* plaintiff could prevail on summary judgment *without* proof of specific

communications between a private party and police, it is irreconcilable for Plaintiffs' claims to be extinguished via Rule 12(b)(6) with allegations of direct communications between the JFS caseworker and BFPC." Appellants Br. at 30. But that does not follow. To establish that any of the TriHealth defendants should be treated as governmental actors on the day in question, the Letas must show that a TriHealth defendant entered into an agreement with the government to vaccinate the children without consent. But the Letas have not alleged that any government actor was present at BFPC that day; that any government actor knew that the children were to be vaccinated that day; or that any government actor had any conversation about vaccinations with any TriHealth defendant. *Adickes* stands for the proposition that a jury may sometimes infer an agreement from the circumstances, including the presence of a state actor during the relevant events, without proof of direct communication.[4] But it does not stand for the quite different proposition that an agreement to accomplish a particular end can be inferred where, as here, there is neither an allegation of communication about that end or even the presence of a state actor during the relevant events.

The Letas have not shown that the TriHealth defendants were state actors for the purposes of their § 1983 denial of access to and control of medical care claims. As a result, the district court did not err by entering judgment in favor of the TriHealth defendants on those claims.

---

[4] The mere presence of a state actor does not convert private action into state action. *See, e.g.*, *Hensley v. Gassman*, 693 F.3d 681, 689 (6th Cir. 2012) ("[A] police officer's presence during a repossession solely to keep the peace, i.e., to prevent a violent confrontation between the debtor and the creditor, is alone insufficient to convert the repossession into state action."); *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1450 (10th Cir. 1995) ("[A] number of courts have held that the mere presence of police officers does not transform the conduct of private parties into state action.").

B.

The Leta family also alleged an unreasonable seizure in violation of the Fourth and Fourteenth Amendments. The district court gave two rationales for dismissing this claim. First, the court determined that there had been no seizure. Second, the district court concluded that, even if there had been a seizure, the complaint didn't establish that the TriHealth defendants were state actors with respect to that claim. The district court noted that there is no allegation that the TriHealth physicians communicated with any agent of the state. As for TriHealth itself, BFPC, and practice manager Zimmer, the court concluded that the allegation that one or more of them "communicated with JFS caseworker Brown and called the Norwood police" was insufficient to hold the TriHealth defendants "liable for acting under the color of state law" with respect to the seizure. *Leta*, 2023 WL 2788833, at *12. This was "particularly" so because "it was the Norwood police officers, not Brown, who escorted Plaintiffs from the premises," and the Leta family did not "allege that any named Defendants acted in concert with them." *Id.*; *see also id.* at *12 n.13 (citing *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009) ("Providing information to the police . . . does not expose a private individual to liability for actions taken under color of law.")); *Weser*, 965 F.3d at 517 ("Even if [a private party] deliberately lied in her statements" to the police, "that would not show that her conduct was fairly attributable to the state or that she was participating in a joint action with state agents.").

The Leta family's briefing does not contest this dispositive conclusion. It offers no analysis of why the amended complaint establishes that the TriHealth defendants were acting as state actors with respect to the Leta family's seizure by the Norwood police. As a result, the Leta family has forfeited any challenge to the dismissal of their unreasonable seizure claim against the TriHealth defendants. *See Island Creek Coal*, 910 F.3d at 256.

\* \* \*

We AFFIRM.